OPINION OF THE COURT
Joseph S. Calabretta, J.
For the first time since the enactment of CPL article 65 (L 1985, ch 505, eff July 24, 1985), this court will determine pretrial whether a child witness in a sexual abuse case is *52 "vulnerable” and whether such witness may testify via closed-circuit television at trial.[1]
Although closed-circuit television testimony is a relatively recent innovation in New York State, six other States, including New Jersey and California, already have statutes permitting this procedure.[2] The Legislature of this State enacted the provisions of CPL article 65 based upon the growing awareness of the enormous incidence of child sexual abuse and its tragic consequences.[3] There are approximately 200,000 incidents of child sexual abuse in the United States each year. In 1982, there were 4,000 reported cases of child molestation in New York alone.[4] It was reported in the May 1984 issue of Newsweek that approximately 20% of all American women and 10% of all men were sexually victimized as children. Child psychiatrists believe the degree of psychic trauma suffered by a child is as dependent upon the way the child is treated by the judicial system as upon the actual victimization. (See, Libai, The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System, 15 Wayne L Rev 997, 981 [1961].) It was the stated legislative intent that the employment of the procedures set forth in article 65 would greatly reduce the trauma child victims of sexual abuse suffer when testifying in open court and consequently, the number of child sexual abuse cases which could be prosecuted would increase.
At the outset, the court will briefly comment and rule upon the defendant’s challenge to the constitutionality of CPL article 65.
The defendant contends that the procedures set forth therein violate her rights of confrontation of the adverse witnesses, of effective assistance of counsel and due process of law as guaranteed by the US Constitution 5th, 6th and 14th Amendments and NY Constitution, article I, § 6.
This court need not delve into the defendant’s constitutional *53 arguments. In People v Algarin (129 Misc 2d 1016) a court of concurrent jurisdiction, having been confronted with the same issue stated: "Specifically, at issue is whether the statute which authorizes the examination of emotionally traumatized child victims by live closed-circuit television violates the defendant’s constitutional right of confrontation.” The court examined in detail the statutory scheme of article 65 and the history and case law pertinent to the constitutional issues raised by the defendant. The court found the provisions of article 65 did not violate defendant’s right to confront witnesses against him. The court reasoned that even assuming that the out-of-court examination to some extent infringed on the defendant’s right to confront witnesses " 'the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process’ ” (People v Algarin, supra, pp 1022-1023). Whereupon, the court concluded that the compelling State interest in protecting the emotional well-being of child sex offense victims more than outweighed such minimal infringement of defendant’s rights.5 Accordingly, the court found article 65 to be constitutional and this court concurs with the upholding of the constitutionality of article 65.
Under indictment No. 4774/85, defendant is charged with three counts of sodomy in the first degree, ten counts of sexual abuse in the first degree and two counts of endangering the welfare of a child. There are two alleged victims, Erica Whit-more, six years of age (born Mar. 7, 1979) and Raheem Larrier, five years of age (born Jan. 5, 1980) at the time of the incidents.
By motion dated January 29, 1986, the People moved pursuant to CPL article 65 (L 1985, ch 505, eff July 24, 1985) for an order declaring Erica Whitmore and Raheem Larrier to be "vulnerable child witnesses” and to permit such witnesses to testify via closed-circuit television at the trial of this matter. The defendant orally opposed the application by the People and by order dated February 21, 1986, the court granted the People’s motion to the extent that a hearing shall be held. (See, CPL 65.20 [5].)
This court conducted said hearing on March 25, 1986. Flora *54 Colao, a certified social worker, and Janice Larrier, mother of Raheem Larrier, and Deborah Whitmore, mother of Erica Whitmore, testified in support of the People’s motion. The defendant did not present any witnesses.
Flora Colao was qualified by the court as an expert witness in the field of sexual abuse of children. At the request of the Queens County District Attorney’s office, Special Victim’s Bureau, on November 26, 1985, Ms. Colao conducted a validation interview with Raheem, in that Raheem alleged he was sexually molested by his baby-sitter, the defendant herein. Ms. Colao spoke with Raheem again, on February 3, 1986 to evaluate his progress.[6] Ms. Colao testified that Raheem told her "he felt bad because of what Joyce did * * * it was nasty * * * [he] did not want to talk about it”. Ms. Colao stated that she asked Raheem to show her what Joyce did using anatomically correct dolls. Ms. Colao testified that Raheem told her he was scared of Joyce, afraid that Joyce was going to bite off his penis, and very frightened that Joyce was going to send monsters to come and get him. Ms. Colao averred that Raheem, indeed, had experienced bad dreams with monsters. Further, she related that Raheem said that he was told by Joyce that there would be trouble if he told his mother about any of the incidents. Raheem told the social worker that it gave him a stomachache to talk about Joyce.
Ms. Colao stated that Raheem is suffering from child sexual abuse syndrome. She further reported "He [Raheem] describes sexual activity, elements of secrecy and coercion and multiple incidents over time. In addition, Raheem has the symptoms of posttraumatic stress disorder as evidenced by his stomachache, sleep disturbance and complaints that he can’t forget it even when he wants to [intrusive memories]”.
Ms. Colao concluded that Raheem would benefit by testifying via two-way closed-circuit television because (1) defendant was Raheem’s baby-sitter and in his mind, is in a position of authority, and (2) Raheem is terrified of the defendant and afraid that she will send monsters to punish him; and that Raheem would be "less frightened if he will not have to be in the same room as the defendant”.
Mrs. Larrier testified that she has known the defendant over the years, and had employed her as a baby-sitter for her *55 son from mid-August until the time of the alleged incident to wit: September 15, 1985.
Ms. Colao also interviewed Erica Whitmore and stated that she was bright and articulate. When questioned about the defendant, Ms. Colao testified that Erica told her that "Joyce was nasty to me * * * I don’t like to think about that nasty stuff with Joyce, that makes me feel sick, like I’m going to throw up. I almost throwed up when she did it”. Ms. Colao related that Erica also suffers from bad dreams. Ms. Colao’s conclusion was that "Erica is suffering from posttraumatic stress as a result of the sexual abuse perpetrated against her and the abuse she witnessed against Raheem. Erica’s symptoms include nightmares and sleep disturbance as well as body aches and nausea when she is reminded of the incident. In addition, she experiences intrusive memories of the event”.
Ms. Colao recommends the use of two-way closed-circuit television for Erica in that (1) the defendant was Erica’s babysitter and in her mind, defendant is in a position of authority, and (2) Erica is very frightened of the defendant. Ms. Colao emphatically stated that if the defendant were not in the same room as Erica, it would make the experience of Erica’s testifying less frightening for her.
Upon cross-examination Ms. Colao stated that the vulnerability factors are different as to Raheem and Erica. She stated that Erica is perhaps less vulnerable because she had only experienced one such alleged incident, while Raheem has had multiple encounters with the defendant.
Mrs. Deborah Whitmore testified that she knows Mrs. harrier as a neighbor in the same building for approximately seven years. She further stated that her daughter, Erica, occasionally visits the defendant’s house to play with the defendant’s daughter. Mrs. Whitmore testified that the defendant has baby-sat for Erica about five times.
The New York statute permits a child witness in a sexual abuse case who is 12 years old or less to testify from a comfortable and less formal "testimonial room” via live two-way closed-circuit television (see, Altman & Lennon, Child Witnesses in Felony Trials-Competency & Protection, NYLJ, Mar. 19, 1986, p 1, col 3).
As defined in CPL 65.00:
"1. 'Child witness’ means a person twelve years old or less who is or will be called to testify in a criminal proceeding, other than a grand jury proceeding, concerning an offense *56 defined in article one hundred thirty of the penal law or section 255.25 of such law which is the subject of such criminal proceeding * * *
“4. 'Live, two-way closed-circuit television’ means a simultaneous transmission, by closed-circuit television, or other electronic means, between the courtroom and the testimonial room in accordance with the provisions of section 65.30.”
Before permitting such a procedure, the court must examine whether the People have met their statutory burden as imposed by CPL 65.10 (1). Said section provides: "A child witness shall be declared vulnerable when the court, in accordance with the provisions of section 65.20, determines by clear and convincing evidence that it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such live, two-way closed-circuit television will help prevent, or diminish the likelihood or extent of, such harm.” (Emphasis added.)
CPL 65.20 (9) further provides: "The court may consider, in determining whether there are such extraordinary circumstances as would cause the child witness to suffer severe mental or emotional harm, a finding that any one or more of the following factors have been established by clear and convincing evidence” (emphasis added).
Subdivision (9) lists 12 factors denominated as (a)-(l) which factors the court may to the extent applicable, examine and consider, individually (and/or collectively) in deciding whether "extraordinary circumstances” exist in order to declare a child witness "vulnerable”. Such factor or factors must be established by the People by the "clear and convincing evidence” standard of proof. "The most important point to be gleaned from subdivision one [of CPL 65.10] is that the closed-circuit television procedure cannot be employed simply because it may be of use in avoiding severe mental or emotional harm to a child of twelve or less called as a witness in a sex crime case. The mental or emotional harm must be tied to 'extraordinary circumstances.’ A listing of factors that qualify for that office is set forth in § 65.30 [9].” (Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 65.10, p 289.)
*57 It is important to emphasize that the court must determine the "vulnerability” of a child witness and the use of closed-circuit television on a case-by-case basis. It is with that proviso in mind that the court now turns to a discussion of the crucial questions presented for resolution in the case at bar.[7] The court will make a separate determination as to each one of the child complainants — Erica Whitmore and Raheem Larrier.[8]
The court will now decide whether the People have sustained their burden by clear and convincing evidence that Raheem Larrier and Erica Whitmore be declared vulnerable child witnesses. CPL 65.20 (11) directs that "the court shall make findings of fact which reflect the causal relationship between the existence of any one or more of the factors set forth in subdivision nine of this section or other relevant factors which the court finds are established and the determination that the child witness is vulnerable.” (Emphasis added.)
The specific factors relied upon by the People in support of their application, as to Erica Whitmore, include, in particular, CPL 65.20 (9) (a), (b), (c), (d) and (l). As to Raheem Larrier, the People additionally rely on factor (j).
The factors relied upon by the People will be listed seriatim:
(a) The manner of the commission of the offense which the defendant is accused was particularly heinous or was characterized by aggravating circumstances.
(b) The child witness is particularly young or otherwise particularly subject to psychological harm on account of a physical or mental condition which existed before the alleged commission of the offense.
(c) At the time of the alleged offense, the defendant occupied a position of authority with respect to the child witness.
(d) The offense or offenses charged were part of an ongoing course of conduct committed by the defendant against the child witness over an extended period of time.
(j) The defendant, at the time of the inquiry (i) is living in the same household with the child witness, (ii) has ready *58 access to the child witness or (iii) is providing substantial financial support for the child witness.
(l) According to expert testimony, the child witness would be particularly susceptible to psychological harm is required to testify in open court or in the physical presence of the defendant.
The court has carefully reviewed the expert testimony of Ms. Colao and finds that the People have proved by clear and convincing evidence factors (b), (c), (d) and (l) as to Raheem Larrier and Erica Whitmore. It is patently obvious that the defendant occupied a position of authority with respect to Raheem Larrier and Erica Whitmore.
CPL 65.00 (6) provides: "A person occupies 'a position of authority with respect to a child’ when he or she is a parent, guardian or other person responsible for the custody or care of the child at the relevant time”.
The defendant had baby-sat several times for Raheem and Erica. Moreover, it is alleged that not only did the defendant sexually touch Erica, but that Erica observed the defendant sexually touch Raheem on the days she had baby-sat for them, thus supporting factor (d) (CPL 65.20 [d]).
Although the People need only prove the causal relationship between the evidence and one factor, in the instant case, however, it is clear to the court what the effect this incident has had on both children (i.e., bad dreams, stomachaches). It is uncontroverted that both children are extremely frightened of the defendant and if placed in the same room as the defendant while testifying, said children would suffer extraordinary psychological harm.
This court finds that the People have met their burden by "clear and convincing evidence” (see, CPL 65.10 [1]).
Accordingly, the court is satisfied that Raheem Larrier and Erica Whitmore, individually, are vulnerable child witnesses.
Under the facts and circumstances of the case at bar as set forth hereinabove, the court finds that placing the defendant and the child witnesses in the same room during the testimony of the child witnesses will contribute to the likelihood that both Raheem and Erica will suffer further severe mental or emotional harm. In addition, the court finds that the defendant’s constitutional rights to an impartial jury or of confrontation will not be impaired if the defendant remains in *59 the courtroom during the testimony of the vulnerable child witnesses.
Based upon the foregoing, the motion by the People is granted.

. The case at bar differs from People v Algarin (129 Misc 2d 1016) in that the court’s decision to declare three witnesses to be "vulnerable child witness” occurred during the trial of that case commonly known as the PRAGA day care case. Moreover, the Algarin court centers its discussion and findings on the constitutional issues raised by the defendant.

. See, State v Sheppard, 197 NJ Super 411, 484 A2d 1330; Hochheiser v Superior Ct., 161 Cal App 3d 777, 208 Cal Rptr 273; see also, State v Melendez, 135 Ariz 390, 661 P2d 654.

. Attorney-General’s Legislative Program, 1985-1986, memorandum in Support of Assembly Bill No. 6924 (No. 172-85).

 & 5. See, Note, The Constitutionality of the Use of Two-Way Closed-Circuit Television to Take Testimony of Child Victims of Sex Crimes, 53 Fordham L Rev 995 (1985) for an excellent discussion on the constitutional aspects.

. Pursuant to CPL 65.20 (7) "any physician, psychologist, nurse or social worker who has treated a child witness may testify at a hearing * * * concerning the treatment of such child witness”.

. The court herein can find no published decisions in this State containing a discussion or review of the findings that must be made pursuant to CPL 65.10 et seg.

. It is important to note that pursuant to CPL 65.20 (6) "the child witness who is alleged to be vulnerable may not be compelled to testify at such hearing or to submit to any psychological or psychiatric examination.” (Emphasis added.)