STATE of Maine

v.

Elwood TWIST.

Supreme Judicial Court of Maine.

Argued Nov. 19, 1986.
Decided July 21, 1987.

David W. Crook, Dist. Atty., Alan P. Kelley (orally), Asst. Dist. Atty., Augusta, for plaintiff.

David A. Cloutier (orally), Matthew F. Dyer, Augusta, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Elwood Twist, appeals from a judgment entered by the Superior Court (Kennebec County), after a jury-waived trial, convicting him of two counts of rape (Class A), five counts of gross sexual misconduct (Class A), and one count of unlawful sexual contact (Class C) involving five different children, ranging in age from 5 to 17 years. He contends that 1) the indictment should have been dismissed for the failure of the grand jury to vote separately on each count, 2) the court erred in allowing an amendment to two counts of the indictment in the middle of the trial, 3) his rights to confrontation under the Maine and United States constitutions were violated by the admission into evidence of video-taped testimony of alleged child victims of sex offenses, and 4) the evidence was insufficient to support the convictions. We vacate the judgments on counts 1 and 2 and

affirm the judgments on counts 3, 5, 7, 8, 9 and 11.[1]

On November 9, 1984, a Kennebec County Grand Jury returned a 12 count indictment against the defendant consisting of 2 counts of rape, 17–A M.R.S.A. § 252, 5 counts of gross sexual misconduct, 17–A M.R.S.A. § 253, and 5 counts of unlawful sexual contact, 17–A M.R.S.A. § 255. The court appointed counsel for the defendant, who was arraigned on November 13. He entered a plea of "not guilty" to all counts. On December 17, 1984, after hearing, the Superior Court denied the defendant's motions for disclosure of matters before the grand jury and for relief from prejudicial joinder. Contending that the grand jury had not voted separately on each count of the indictment, the defendant subsequently moved to dismiss the indictment. The Superior Court denied that motion on April 18, 1985. On May 6, the State filed a motion for an *in camera* hearing and videotaping of sexual abuse victims pursuant to 15 M.R.S.A. § 1205 (Supp.1984), subsections 1 and 2 *repealed and replaced* by P.L. 1985, ch. 495, § 1 (effective September 19, 1985). On June 19, after hearing, the Superior Court granted the State's motion. The defendant's jury-waived trial commenced on June 26. On the day of trial, the State filed a motion to amend counts 1 and 2 of the indictment. That motion was heard at trial and granted. The Superior Court received in evidence videotaped depositions of two children alleged to have been victims of sex abuse perpetrated by the defendant. The court and the parties viewed the videotaped testimony at trial. On June 27, 1985, the court entered the judgments of conviction from which the defendant appeals.

## I.

The defendant argued before the Superior Court and now argues on appeal that Article I, section 7 of the Maine Constitution guarantees a defendant in a criminal case the right to have a separate vote by the grand jury on every count of a multiple count indictment such as the one returned against him in this case.[2]

■ The defendant's argument is without merit. The first sentence of Rule 6(i) of the Maine Rules of Criminal Procedure provides that "[a]n *indictment* may be found only upon the concurrence of twelve or more jurors" (emphasis added), and Rule 8 provides that "[t]wo or more *offenses* may be charged in the same indictment ... in a separate count for each offense ..." (emphasis added). Article I, section 7 of the Maine Constitution speaks only in terms of the requirement of an "indictment," not separate votes on offenses within a single indictment.[3] Thus, neither the Maine Rules of Criminal Procedure nor the Maine Constitution requires the grand jury to vote separately on each offense in a single indictment.

Our conclusion is supported by analogous federal authority. The first sentence of Rule 6(i) of the Maine Rules of Criminal Procedure tracks the language of Rule 6(f) of the Federal Rules of Criminal Procedure. *See generally* 1 Cluchey & Seitzinger, *Maine Criminal Practice,* at 6–5 (1986). Article I, section 7 of the Maine Constitution also tracks the language of the fifth amendment to the United States Constitution. Federal courts hold that it is not necessary for grand jurors to vote separately on each count of an indictment. *E.g., United States v. Felice,* 481 F.Supp. 79, 82 (N.D.Ohio 1978); *United States v. Winchester,* 407 F.Supp. 261, 278 (D.Del. 1975).

We agree with these decisions and hold that the defendant was properly indicted by

---

1. The Superior Court found the defendant not guilty on counts 4, 6, 10, and 12 of the indictment charging other acts of sexual misconduct.

2. Article I, section 7 of the Constitution of Maine provides, in pertinent part: "No person shall be held to answer for a capital or infamous crime, unless on a presentment or indictment of a grand jury ..."

3. Moreover, Rule 6(c) of the Maine Rules of Criminal Procedure requires the foreman of the jury to record "the number of jurors concurring in the finding of every indictment," not every offense.

the grand jury, regardless of whether or not they voted separately on each count.

## II.

We do find meritorious, however, the defendant's challenge to the State's mid-trial amendment of the indictment.

Because counts 1 and 2 had charged the defendant with rape by defining "compulsion" by reference to an amendatory statute that became effective subsequent to the commission of the crimes charged, the State moved to amend these counts to have them comport with the statute in effect when the offenses were alleged to have been committed. The two counts in question charged that on two separate occasions, in 1978 and 1979, respectively, the defendant's daughter submitted to sexual intercourse with the defendant "as a result of compulsion as defined in Title 17–A M.R. S.A. Section 251(1)(E)." The cited statute did not become effective until 1981. P.L. 1981, ch. 252, § 1 (effective September 18, 1981).

In 1978 and 1979, the applicable statute provided:

1. A person is guilty of rape if he engages in sexual intercourse:

.    .    .    .    .

B. With any person, not his spouse, and he compels such person to submit:

(1) by force and against the person's will. . . .

17–A M.R.S.A. § 252(1)(1979). The statute was amended by P.L.1981, ch. 252, to include an explicit definition of compulsion as "physical force, *a threat of physical force or a combination thereof* which makes a person unable to physically repel the actor. . . ." 17–A M.R.S.A. § 251(1)(E) (1983) (emphasis added). Thus, by indicting the defendant under the 1983 definition of compulsion, the grand jury erroneously treated "threat of physical force" as an element of the crimes charged.

Rule 7(e) of the Maine Rules of Criminal Procedure provides:

The Court may permit the amendment of an indictment charging an offense other than a Class D or Class E crime at any time before verdict or finding *if the amendment does not change the substance of the offense.* (Emphasis added.) The defendant argues that because the amendment changed the substance of the offense, the condition of the rule prevented its allowance. We agree.

In *State v. Hathorne*, 387 A.2d 9, 11 (Me.1978) this Court stated that "to amend the indictment *in substance*, without resubmitting it to the grand jury, would cause the indictment to be other than the one returned by the grand jury," in violation of Article I, Section 7 of the Maine Constitution. We have said that "[a] substantive amendment is one that changes the nature or grade of the offense charged." *State v. Larrabee*, 377 A.2d 463, 465 (Me.1977).

In *Hathorne*, we held "that where no prejudice to the defendant will result an indictment may be amended at trial in matters of form without the need for resubmission of the indictment to the grand jury." 387 A.2d at 12.

■ The amendment in the case before us is not merely one of form. The indictment defined one element of the crimes charged in accordance with a statute that did not become effective until two and three years, respectively, after each of the crimes were allegedly committed. This statute, which became effective in 1981, expanded the previous element of compulsion by force in the crime of rape to include, by definition, a "threat of physical force." The crimes alleged in counts 1 and 2 of the indictment allegedly occurred in 1978 and 1979, however, at which time "compulsion" in the alleged commission of "forcible rape" did not include a "threat of physical force." *See State v. Colson*, 405 A.2d 717 (Me.1979). As a result, the amendment did indeed change the nature of the offense charged and was therefore a substantive change in the indictment. *See State v. Larrabee*, 377 A.2d at 465. We therefore conclude that the court erred in permitting an amendment of counts 1 and 2 of the indictment because such an amendment was not authorized under Rule 7(e) of the Maine Rules of Criminal Procedure.

The indictment may only be amended on this matter of substance by a resubmission of the case to the grand jury. *State v. Hathorne,* 387 A.2d at 11.

## III.

We now turn to the Confrontation Clause issues raised by the defendant.

On May 6, 1985, the State filed a motion requesting the court to allow the testimony of two alleged child victims of sexual abuse by the defendant to be videotaped pursuant to 15 M.R.S.A. § 1205 (Supp.1984), subsections 1 and 2 *repealed and replaced by* P.L.1985, ch. 495, § 1 (effective September 19, 1985).[4] The hearing on the motion was held on June 19, 1985, one week before trial. The State presented testimony from the children's foster parent, Dr. V., a qualified expert in the field of pediatric psychiatry.[5]

Dr. V. testified that two children, referred to herein as Jane and John Doe, who are brother and sister, started living at his home on June 28, 1984, when they were 5 and 7 years old, respectively, shortly after experiencing alleged sexual abuses by the defendant.[6] He testified that when the children arrived at his home they "acted out" sexually about 95 percent of the time: John would urinate on his sister to awaken her, the children interacted sexually, they demonstrated sexual intercourse with dolls, John constantly discussed and demonstrated the way his mother looked while in the act of sexual intercourse, and he attempted to teach a two-year old how to masturbate. According to Dr. V., after they had been in his home for about three months, this behavior started to subside. After they testified before the grand jury in this case, however, the children began acting out sexually about 90 percent of the time: the children would "screw" each other, they sexually assaulted other children, and John was suspended from school for his explicit sexual behavior. It took another 3 or 4 months for the children's sexual behavior to subside after they gave their testimony before the grand jury. Dr. V. testified that the children had been placed in court settings on other occasions and that such experiences caused the children to "regress." He stated that further regressions would be "horrendously difficult" for his family such that he would not continue to keep the children in his care as a foster parent. Dr. V. testified that the children would suffer psychologically and emotionally if they were required to face the defendant while presenting testimony concerning his alleged sexual abuses. After cross-examination of Dr. V. by defendant's counsel, the court heard arguments from counsel.

---

4. At the time of the motion and the defendant's trial, section 1205 read as follows:

    **§ 1205. Certain out-of-court statements made by minors describing sexual contact**

    A hearsay statement made by a person under the age of 14 years, describing any incident involving sexual intercourse, a sexual act or sexual contact performed with or on the minor by another, shall not be excluded as evidence in criminal proceedings in courts of this State if:

    **1. Emotional or psychological well-being of a person.** On motion of the prosecution and in camera hearing, the court expressly finds that the emotional or psychological well-being of the person would be substantially impaired if the person were to testify at trial; and

    **2. Examination and cross-examination.** Pursuant to an order of the court made on such finding, the statement is made under oath, the defendant has been given the same rights in regard to the examination and cross-examination of the person as if the person were testifying in open court, and the state-

    ment has been recorded stenographically or on videotape or by another means approved by the court.

    P.L.1983, ch. 411, § 1 (effective September 23, 1983).

5. Dr. V. completed his internship and residency in pediatrics and practiced in that field for 10 years. He then pursued a fellowship in child psychiatry/pediatrics eventually taking a clinical residency in general psychiatry. He practiced psychiatry for 7 years and became a board certified psychiatrist in 1980. He testified that in his work as a pediatrician and psychiatrist, he worked with emotionally disturbed children, many of whom were victims of sex abuse. At the time he testified, he was employed by an Alcohol and Drug Dependency Unit at a local hospital, where he worked with children in family therapy programs.

6. The indictment charged that the defendant sexually abused these children between May 1, 1984 and June 24, 1984.

The State argued that the children—who were the alleged victims of sexual abuse, not only in this case, but also in a separate criminal proceeding involving their mother as the defendant—would suffer severe emotional trauma if required to testify twice in full trial settings; first, in front of the defendant, who they feared, and second, at a trial of their own mother. Defense counsel argued that the State's motion to videotape the children's testimony for admission at trial should be denied on the grounds that such a procedure would violate the defendant's constitutional right to have a face to face confrontation with adverse witnesses. The Superior Court rejected this argument stating that, by enacting section 1205, the Legislature properly balanced defendants' sixth amendment rights with "the problems connected with testimony of witnesses of tender years in this kind of situation." The court then found, on the record, that the emotional and psychological well-being of the children would be "substantially impaired" if they were to testify in a "normal trial setting."

In an order dated June 20, 1985, the court granted the State's motion, stating its finding "that the emotional or psychological well-being of the witnesses would be substantially impaired if those witnesses were to testify at the trial." It ordered the videotaping of the children's testimony in such a manner that the defendant would not be visible to the witnesses, but that the witnesses would be observed by the defendant, provided that the defendant's attorney would have "the right to confront and cross-examine the State's witnesses" on behalf of the defendant.

The children's testimony was videotaped on June 24, 1985 in a deposition-type setting outside the court. Present at the videotaping session were the children, attorneys for the parties, and the defendant, who sat behind a one-way mirror through which he could see and hear the children as they testified. The children were not aware of his presence. The defendant maintained constant communication with his attorney through a one-way audio hook-up and could view the videotape simultaneously on a television monitor, which was also placed behind the mirror. The videotaping was stopped on occasion so that the defendant and his attorney could discuss, outside of the presence of the children, any objections they might have to the testimony.

After the children were placed under oath, the attorneys for both parties asked them some preliminary questions in order to test their competency. Defendant's counsel thereafter cross-examined each child. Objections to the testimony were included in the videotape. The tape was shown at trial and stopped at each objection in order to permit the court to rule. The court allowed the defendant to raise additional objections at trial that were not made at the time of taping.

On the videotape, Jane Doe, who was six years old at the time, testified that "Grampy" used "wood" on her brother, that "he put it inside" him and that "he put it inside" her. She also referred to "Grampy's" suitcase where he kept the "wood." John Doe, who was eight at the time, testified that "Grampy" was the defendant, Elwood Twist, and that the defendant put his penis in his sister's vagina. He testified that the defendant touched him with his penis. He described the defendant's suitcase, which contained "pretend penises," and testified that the defendant "put it in [his sister's] bottom and vagina" and "touched him with it on his penis."

The children's testimony was corroborated at trial. Two witnesses discussed the defendant's suitcase, which contained many items of sex paraphernalia. Dr. V. testified that John had trouble holding his stool because the anal sphincter that normally closes the anus was stretched to about an inch and a half in diameter. He testified that he had observed this condition in other children, but that John's condition was the worst he had seen. He stated that such conditions were always caused by "sexual penetration, either with a dildo or a penis." He also described, in detail, the sexual "acting out" exhibited by John and Jane when they came into his care. He testified that "they referred to Grampy as having a gun and threatened to shoot them if they

revealed what Grampy had done to them [a]nd for a long time they had dreams about it; they would wake up and say they dreamed that Grampy had thrown them in the fire, or that he had killed their mommie, or other such nightmares." Undisputed testimony established that the children saw the defendant kill their cat by burning it in an oven.

On appeal, the defendant argues that the admission of the children's videotaped testimony at trial violated his constitutional rights under the Confrontation Clause of the sixth amendment to the United States Constitution.[7] He contends that this is so because he was not able to confront the children face to face when they gave their testimony at the videotaping session.[8]

The Sixth Amendment's Confrontation Clause, which is made applicable to the States through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1067–69, 13 L.Ed.2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Supreme Court has said that "[t]he Confrontation Clause provides two types of protection for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, —— U.S. ——, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987). These are primarily trial rights. *Id.*, 107 S.Ct. at 999; *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318,

1322, 20 L.Ed.2d 255 (1968). It is the "literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause." *California v. Green*, 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). The most widely quoted expression of the essential purpose of the Clause is found in the Court's opinion in *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1894), where it said:

> The primary object of the [Confrontation Clause of the sixth amendment] ... was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

If read literally, the Confrontation Clause "would require, on objection, the exclusion of any statement made by a declarant not present at trial," regardless of established exceptions to the hearsay rule. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The

---

**7.** The defendant also argues that he was deprived of his confrontation rights under the Maine Constitution. Finding no extraordinary circumstances to persuade us otherwise, we do not address his state constitutional argument because it was not raised before the Superior Court. *See State v. Thornton*, 485 A.2d 952, 953 (Me.1984).

**8.** At the hearing on the State's motion to videotape the children's testimony, defendant's counsel objected to the taking of the children's depositions on videotape as follows:

> I think our primary concern is the right of our client to confront the witnesses against [him], and I think to remove him, not physically from the courtroom, but just to put him behind the screen of a one-way mirror denies his right to confront the witnesses against him....

At trial, after the court had viewed the videotape of Jane's testimony, defense counsel objected to the use of the videotapes as follows:

> Your Honor, just for the record, I would like to note that we're done watching the tape of the witness, [Jane Doe], that just for the record, we object to her testimony being taken in the first place, and we are continuing to object to having the video tape testimony entered into evidence in this case *for all the reasons that we stated during the motion hearing.*

The court responded:

> All right. The record may clearly indicate that counsel for the Defendant have initially, now, and continue to object to the admission into evidence of the video tape of the testimony of the two witnesses, [Jane Doe] and the witness whose testimony we are now going to view who is [John Doe].

Court has "long rejected" such a result, however, "as unintended and too extreme." *Id.* For instance, in *Mattox*, the Court recognized as constitutionally acceptable the admissibility of incriminating testimony of a deceased witness who had testified at a former trial. 156 U.S. at 240–44, 15 S.Ct. at 338–40. There, the Court said:

> ... [G]eneral rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case....
>
> A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant.

*Id.* at 243, 15 S.Ct. at 340.

In the case before us, we must weigh such factors in a careful review of the entire record.

It was patently clear to the parties and the court that the very purpose of videotaping the testimony of Jane and John Doe was to present it as evidence at trial against the defendant which was to be held one week later. In this situation, where it was anticipated that the defendant would not retain the right to confront the children at trial, it was crucial that the setting in which the videotaping occurred simulated, as closely as possible, a full-fledged hearing. *Cf. Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965) (admission into evidence of prior testimony of witness violated accused's confrontation rights, but result would have been different if witness's statement had been taken "at a full-fledged hearing"); *see also Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2315, 33 L.Ed.2d 293 (1972) (Confrontation Clause not violated when prior testimony of unavailable witness admitted against accused, and accused, through counsel, had adequate opportunity to cross-examine witness when the testimony was given); *California v. Green,* 399 U.S. at 165, 90 S.Ct. at 1938 (preliminary hearing testimony admissible under Con-

frontation Clause when "given under circumstances closely approximating those that surround the typical trial"). Absent countervailing considerations, this would include affording the defendant his confrontation rights at the videotaping session itself; not just the right of cross-examination through competent counsel, but the right to see and be seen by the witnesses, face to face. As the Eighth Circuit Court of Appeals said in a similar context, "Most believe that in some undefined but real way recollection, veracity, and communication are influenced by face to face challenge. This feature is part of the sixth amendment right additional to the right of cold, logical cross-examination by one's counsel." *United States v. Benfield,* 593 F.2d 815, 821 (8th Cir.1979).

██ We conclude, however, that countervailing considerations of public policy and the necessities of this particular case as presented to the Superior Court, warranted dispensing with direct, face to face confrontation between the defendant and the children at the time of the videotaping of their testimony. In the light of the highly credible testimony of Dr. V., it is clear that these children would have suffered severe psychological and emotional damage if they had been required to face the defendant when they gave their testimony in front of the videocamera. We recognize, in addition, that recording the testimony of these children in this manner advanced the important public policy of protecting the emotional and psychological well-being of young children. In these circumstances, we conclude that it was unnecessary, for the purpose of meeting the requirements of the Confrontation Clause, for the defendant to confront the children face to face when they testified before the videocamera.

Our analysis of the Confrontation Clause issue in this case does not end here however. By objecting to the admission into evidence of the children's videotaped testimony at trial, the defendant presents us with other considerations that bring into play a set of rules that the Supreme Court has articulated for testing the admissibility

of hearsay evidence in light of the requirements of the Confrontation Clause. These principles are set forth in *Ohio v. Roberts*, where the Court said:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 66, 100 S.Ct. at 2539.[9]

Cases involving determinations of whether the admission of hearsay evidence against a defendant violates his or her rights to confrontation must be decided on a case-by-case basis. *See Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970); *see also Mancusi v. Stubbs*, 408 U.S. at 213, 92 S.Ct. at 2313 (distinguishing *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). Under the particular facts of this case, we conclude that the children's videotaped testimony was admissible under the two-pronged *Roberts* test of "unavailability" and "trustworthiness."

At the hearing on the State's motion to videotape the children's testimony, held one week before trial, Dr. V., who was uniquely situated and qualified to testify on Jane and John's psychological and emotional conditions, explained that these children would suffer severe psychological distress if they testified in front of the defendant in a trial setting.[10] Given this highly credible testimony, the Superior Court was warranted in finding that, under section 1205, the State proved by clear and convincing evidence that the children's emotional or psychological well-being would be substantially impaired if they were to testify at trial.[11] We conclude that this "psychological unavailability" satisfies the first prong of the *Roberts* test. *See Commonwealth v. Willis*, 716 S.W.2d 224, 230 (Ky.1986); *State v. Tafoya*, 105 N.M. 117, 120, 729 P.2d 1371, 1374 (Ct.App.1986), *cert. denied*, 105 N.M. 94, 728 P.2d 845 (1986), *petition for cert. filed*, 55 U.S.L.W. 3665 (U.S. Feb. 12, 1987) (No. 86–1343); *see also State v. Robinson*, 153 Ariz. 191, 735 P.2d 801, 813 (1987); *Warren v. United States*, 436 A.2d 821, 828–30 (D.C.App.1981); *State v. Burns*, 112 Wis.2d 131, 332 N.W.2d 757, 763–64 (1983).

Turning to the second prong of the *Roberts* test, we must determine whether the children's testimony was sufficiently trustworthy or reliable, despite the fact that the defendant did not confront the children

**9.** By stating that the Confrontation Clause "normally" requires a showing of unavailability of the declarant before that declarant's testimony can be admitted against a defendant, the Court left open the possibility that there may be circumstances in which a showing of unavailability is not required. The Court has now made clear, however, that the "unavailability" requirement applies in cases, such as the one before us, where prior testimony is offered in a criminal trial against the defendant. *See United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 1126, 89 L.Ed.2d 390 (1986).

**10.** Dr. V., who, by unusual coincidence, was both the foster parent of the children and a specialist in the field of pediatric psychiatry, was especially qualified to testify as to the emotional and psychological conditions of Jane and John Doe. Courts and commentators have said that the experts most qualified to testify concerning sexually-abused children's emotional or psychological ability to withstand the traumas of testifying against alleged perpetrators at trial

are mental health professionals who have had direct experience with the child. *See People v. Gomez*, 26 Cal.App.3d 225, 228, 103 Cal.Rptr. 80, 82 (1972); *People v. Henderson*, 132 Misc.2d 51, 503 N.Y.S.2d 238, 243 (Sup.Ct., Queens Co.1986); Bulkley, *Evidentiary and Procedural Trends in State Legislation and Other Emerging Legal Issues in Child Sexual Abuse Cases*, 89 Dick.L.Rev. 645, 653–54 (1985). *See also State v. Burns*, 112 Wis.2d 131, 332 N.W.2d 757, 762–64 (1983).

**11.** We impose a "clear and convincing evidence" standard of proof for the determination of witness "unavailability" under the Confrontation Clause. *See People v. Henderson*, 503 N.Y.S.2d at 242; *see also Hochheiser v. Superior Court*, 161 Cal.App.3d 777, 793, 208 Cal.Rptr. 273, 283 (1984) (child abuse victim's unavailability to testify at a defendant's trial owing to possibility of additional injury must be established "both in fact as well as in logic, and its dimensions must be spelled out in terms of its nature, degree and potential duration") (*dictum*).

face to face when they gave their testimony before the videocamera.[12] We focus primarily on whether circumstances surrounding the hearsay provided sufficient information to the trier of fact to assess its reliability. *State v. Smith,* 415 A.2d 570, 573 (Me.1980) (citing *Mancusi v. Stubbs,* 408 U.S. at 213, 92 S.Ct. at 2313).

The defendant's literal right to confront witnesses face to face when they give their testimony against him is an important feature of the Confrontation Clause that must be considered in a determination of whether that testimony, when admitted into evidence as hearsay, is sufficiently reliable. *See United States v. Benfield,* 593 F.2d at 821. Other factors, however, must also be examined in making such a determination. Of paramount importance is a consideration of whether the defendant, through competent counsel, adequately cross-examined the witnesses when they gave their prior testimony. *See Ohio v. Roberts,* 448 U.S. at 67–73, 100 S.Ct. at 2540–2543; *California v. Green,* 399 U.S. at 151, 165, 90 S.Ct. at 1931, 1938. Also important are considerations of whether the prior testimony was given under oath, *id.* at 165, 90 S.Ct. at 1938, and whether the factfinder observed the demeanor of the witnesses. *Baber v. Page,* 390 U.S. at 725, 88 S.Ct. at 1322. *See also* Comment, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum.L. Rev. 1745, 1758 (1983); Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv.L.Rev. 806, 821 (1985).

In the case before us, the videotape shows that the children understood the serious nature of their testimony and the requirement to tell the truth.[13] The videotape also clearly provides the viewer with the opportunity to observe the demeanor of the children as they testified. The defend-

ant was present at the videotaping session, watched and heard the children while they testified, was in constant communication with his attorney during the session, and through his attorney, effectively cross-examined the children. The trustworthiness of the children's testimony was reinforced by corroborating evidence presented at trial, including descriptions of the contents of the defendant's suitcase and Dr. V.'s testimony regarding the children's behavior and physical conditions.

In these circumstances, we conclude that the children's videotaped testimony provided sufficient information for the trier of fact to assess its reliability. *See State v. Smith,* 415 A.2d at 573. It was therefore surrounded by sufficient guarantees of trustworthiness to satisfy the second prong of the *Roberts* test.

After carefully reviewing the record in this case, we conclude that for the purpose of satisfying the requirements of the Confrontation Clause, it was not necessary for the defendant to physically confront the children face to face when they gave their testimony in the form of videotaped depositions and that the admission of that testimony at trial did not violate the defendant's rights under the Confrontation Clause. *See Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

## IV.

The final issue presented is whether the evidence before the Superior Court was sufficient to support the defendant's conviction. Having thoroughly reviewed the record, including the videotape of the testimony of Jane and John Doe, in a light that is most favorable to the prosecution, we conclude that the Superior Court rationally could find beyond a reasonable doubt every

---

**12.** Since the children's videotaped depositions were admitted into evidence pursuant to 15 M.R.S.A. § 1205 (Supp.1984), subsections 1 and 2 *repealed and replaced* by P.L.1985, ch. 495, § 1 (effective September 19, 1985) rather than a "firmly rooted" exception to the hearsay rule, it must be shown that the hearsay exhibits "particularized guarantees of trustworthiness." *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539.

**13.** Indeed, evidence in the record reveals that after the videotaping session, the children were distressed because they feared that the defendant would retaliate against them. Such behavior tends to confirm that they understood the serious nature of their testimony.

element of the offenses charged. *See State v. Barry*, 495 A.2d 825 (Me.1985).

The entry is:

The judgments on counts 1 and 2 are vacated and remanded for further proceedings consistent with the opinion herein. The judgments on counts 3, 5, 7, 8, 9, and 11 are affirmed.

All concurring.