OPINION OF THE COURT
Lawrence H. Bernstein, J.
This is a case of first impression in New York State involving the constitutionality of legislation which was recently enacted to protect certain child witnesses in sex offense prosecutions. Specifically, at issue is whether the statute which authorizes the examination of emotionally traumatized child victims by live closed-circuit television outside of the physical presence of the defendant violates the defendant’s constitutional right of confrontation. The question arose at the trial of the defendant, a former teacher’s aide at the PRACA day care center in The Bronx, on more than 80 counts of rape, sodomy, *1017 and sexual abuse. All 15 of the alleged victims attended the day care center and were aged four to six at time of the alleged offenses and five to seven at the time of the trial.
The statute in question amended the Criminal Procedure Law by adding thereto a new article 65 (L 1985, ch 505). It was approved by both houses of the New York State Legislature on July 24, 1985, effective immediately, and was made applicable to all criminal actions and proceedings commenced prior to the effective date but still pending on such date.[1]
The purpose of the legislation was to minimize the trauma associated with requiring child witnesses to testify in certain proceedings. That is, it was designed to spare young child victims of sex offenses any additional emotional distress arising out of public testimony before a jury and in the physical presence of the defendant.
To effectuate these protective ends, the statute provides in pertinent part:
"§ 65.00 Definitions
"As used in this article:
"1. 'Child witness’ means a person twelve years old or less who is or will be called to testify in a criminal proceeding, other than a grand jury proceeding, concerning an offense defined in article one hundred thirty of the penal law or section 255.25 of such law which is the subject of such criminal proceeding”.
"§ 65.20 Closed-circuit television; procedure for application and grounds for determination * * *
"10. * * * [T]he court, at the request of either party or on its own motion, may declare a child witness to be vulnerable when it determines from its own observations that a child witness who has been called to testify at a criminal proceeding is suffering severe mental or emotional harm and therefore is physically or mentally unable to testify or to continue to testify in open court or in the physical presence of the defendant and that the use of live, two-way closed-circuit television is necessary to enable the child witness to testify.
"11. * * * If the court is satisfied that the child witness is vulnerable and that, under the facts and circumstances of the particular case, the defendant’s constitutional rights to an *1018 impartial jury or of confrontation will not be impaired, it may enter an order granting the application for the use of live, two-way closed-circuit television.
"12. When the court has determined that a child witness is a vulnerable child witness, it shall make a specific finding as to whether placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm. If the court finds that placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm, the order entered pursuant to subdivision eleven of this section shall direct that the defendant remain in the courtroom during the testimony of the vulnerable child witness.”
Defendant’s challenge to the statute’s constitutionality, based upon an alleged violation of his right of confrontation guaranteed by the Federal and New York State Constitutions, occurred at that point in the trial when the People called Athena Perez, a five-year-old child, to testify against the defendant. Up to that time, three other young children had been able to testify in open court, without resorting to closed-circuit television, to having been sexually victimized by the defendant in the bathroom or closet of their classroom at the day care center.
Athena Perez was, however, a far more frightened and fragile child, and when it appeared that she was incapable of testifying publicly, the People moved pursuant to CPL 65.20 (10) for permission to use live two-way closed-circuit television.
At the time, the court heard argument from both sides concerning the constitutionality of the statute on its face as well as in its particular application to the child Athena Perez and conducted a hearing to supplement its own observations concerning the child’s vulnerability.[2]
Based upon its own observations as well as Athena’s mother’s testimony at the hearing and the statements of the prosecutor concerning her own out-of-court observations of the child’s behavior, the court-found from the Bench that Athena *1019 Perez was a vulnerable child witness; to wit, that she was visibly frightened by the jury, the defendant and the entire courtroom setting; that she was unable to answer any questions other than the neutral questions asked of her outside of the jury’s presence during the preliminary voir dire on her capacity to testify as a sworn witness; that she had left the courtroom clutching her mother and crying hysterically and that the hysteria continued for a time thereafter; that she expressed terror of the defendant, and that, therefore, she was suffering and would continue to suffer great mental and emotional harm unless her testimony was taken outside of the jury’s and defendant’s presence via closed-circuit television.
The court further ruled orally that the statute did not violate the defendant’s right of confrontation and advised counsel that a written opinion would be forthcoming to elaborate upon the court’s reasoning. The trial having concluded,[3] the court now takes this opportunity to amplify its prior oral decision.
In accordance with the statute, the following procedure was utilized upon a determination that a child witness was a vulnerable child witness:[4] the child witness testified from a small "testimonial room” that was separated from the courtroom.[5] In addition to the child witness, the attorneys for the People and one attorney for the defense were also in this room.[6] The other defense attorney was seated beside the defendant at the counsel table in the courtroom. The image and voice of the child witness, as well as those of the attorneys, were transmitted live by means of closed-circuit televi *1020 sion to the courtroom, where the Judge, jury, defendant, his other attorney and the public could listen to the testimony and observe the demeanor of the witness. Thus, the child witness was constantly aware that both the jury and the defendant were looking at her during the testimony. Simultaneously, the voice of the Judge as well as the images of the jury and of the defendant were transmitted to the testimonial room. In addition, a two-way private communication system was set up from the defense table to the testimonial room so immediate conversations could take place among the defendant and his attorneys.
It is the reasoned judgment of the court that the procedures utilized did not violate the defendant’s right of confrontation and that the use of the two-way closed-circuit television under these circumstances is an acceptable method of balancing the interests of the children and the rights of the defendant while at the same time affording the jury the maximum opportunity to ascertain the truth by listening to the children witnesses and observing their demeanor.
The US Constitution 6th Amendment provides, in part, that "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him”. This right is protected in New York not only by application of the 6th Amendment to the States through the 14th Amendment, but also by similar language in the NY Constitution. (Pointer v Texas, 380 US 400, 403 [1965]; People v Egan, 78 AD2d 34, 38 [1980]; NY Const, art I, § 6.)
Omissions and ambiguities in the historical record have fueled a wide-ranging debate about the origin, development and intended meaning of the confrontation clause. (See, e.g., California v Green, 399 US 149, 176, n 8 [concurring opn, Harlan, J„ 1970].)
In 1895, the Supreme Court, in an attempt at an historical explication of the clause stated that: "[t]he primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look [upon] him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.” *1021 (Mattox v United States, 156 US 237, 242-243 [1895]; see also, Douglas v Alabama, 380 US 415, 418-419 [1965]; California v Green, 399 US 149, 156-157, supra.) Most recently, the Supreme Court said that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right to cross-examination.’ ” (Ohio v Roberts, 448 US 56, 63 [1980].)
Today, it is, thus, generally agreed that the confrontation clause serves two distinct purposes: first and primarily, to secure the opportunity of cross-examination and, secondarily, to enable a jury to observe a witness’ demeanor when brought face to face with the accused. (Mattox v United States, supra; Kirby v United States, 174 US 47 [1899]; Ohio v Roberts, supra.)
There can be no doubt that the new CPL article 65 meets ’the primary objective of providing an opportunity for contemporaneous cross-examination. (See, Propriety of Allowing Absent Witness to Be Examined Over Closed-Circuit Television, Ann., 80 ALR3d 1212; Kansas City v McCoy, 525 SW2d 336 [Mo 1975]; State v Sheppard, 197 NJ Super 411, 484 A2d 1330 [1984].)
Defendant contends, however, that the confrontation clause entitled him to confront every witness against him in person in court and that live televised testimony thus fails to satisfy the secondary purpose of a true face-to-face encounter.
This literalistic reading of what our Constitution requires is without merit. In Douglas v Alabama (380 US 415, 418, supra), the Supreme Court stated that "an adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation” (emphasis added). And, a fair interpretation of Ohio v Roberts (supra), the Supreme Court’s latest pronouncement on the subject, is that the court "distinguishe[d] between the desirability, expressed in terms of 'preference,’ of face-to-face courtroom confrontation and the 'secured’ right of cross-examination. This alone suggests that the confrontation guaranteed by the clause is not necessarily one in a courtroom.” (State of Washington, 202 NJ Super 187, 191, 494 A2d 335, 337 [1985].)
Moreover, Supreme Court cases show that prior to the availability of television, confrontation generally involved a face-to-face meeting with one’s adversaries. (Mattox v United States, 156 US 237, supra; Kirby v United States, 174 US 47, supra; United States v Benfield, 593 F2d 815 [8th Cir 1979].) *1022 While modern cases also use the term "face-to-face” (Ohio v Roberts, supra), it has been argued that this language supports the right of cross-examination rather than of physical confrontation per se and that the court’s choice of words may have resulted from its inability to foresee technological developments permitting cross-examination and confrontation without physical presence. (See, Note, The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations, 98 Harv L Rev 806 823, n 108 [1985].)
In any event, State and Federal courts have acknowledged that electronic video technology can satisfy this requirement of face-to-face confrontation. (United States v Benfield, 593 F2d, at pp 821-822; Kansas City v McCoy, 525 SW2d, at p 339; State v Sheppard, 197 NJ Super 411, 484 A2d 1330, 1342-1343, supra.) The accuracy and reliability of videotapes, a technology identical to that involved in closed-circuit television, has been well documented and accepted in criminal proceedings. (See, Hendricks v Swenson, 456 F2d 503 [8th Cir 1972]; People v Moran, 39 Cal App 3d 398, 410, 114 Cal Rptr 413, 420 [Dist Ct App 1974]; People v Higgins, 89 Misc 2d 913, 916-918 [Sup Ct, Bronx County 1977]; Shutkin, Videotape Trials: Legal and Practical Implications, 9 Colum J L & Soc Probs 363 [1973]; Barber and Bates, Videotape in Criminal Proceedings, 25 Hastings LJ 1017 [1974].)
It is apparent to this court from a demonstration of the equipment used in this case that closed-circuit television has the capacity to present clear and accurate sounds and images to the defendant, the witness, the Judge, the jury and the public. If "[v]ideo tape is sufficiently similar to live testimony to permit the jury to properly perform its function” (People v Moran, 39 Cal App 3d 398, 410, 114 Cal Rptr 413, 420, supra; State v Sheppard, 197 NJ Super 411, 484 A2d 1330, 1341, supra) then instantaneous closed-circuit television can surely satisfy the dictates of the confrontation clause.
Moreover, even were it assumed that CPL article 65 results in some diminution of the right of confrontation, nearly every authority acknowledges that this right, though expressed in absolute terms, is subject to exceptions. As early as 1895, the Supreme Court noted that the 6th Amendment’s right of confrontation "must occasionally give way to considerations of public policy and the necessities of the case.” (Mattox v United States, 156 US, at p 243.) Later, the Supreme Court stated, "Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate *1023 other legitimate interests in the criminal trial process.” (Chambers v Mississippi, 410 US 284, 295 [1973].) Most recently, the court "has recognized that competing interests, if 'closely examined,’ * * * may warrant dispensing with confrontation at trial.” (Ohio v Roberts, 448 US, at p 64.) But the "denial or significant diminution [of the right to confrontation] calls into question the ultimate ' "integrity of the fact-finding process” ’ and requires that the competing interest be closely examined.” (Chambers v Mississippi, 410 US, at p 295; Berger v California, 393 US 314 [1969].) A "careful weighing is required in each case, and any finding of good cause to dispense with the need for confrontation must be specifically stated so that it may be subjected to meaningful appellate review.” (People ex rel. McGee v Walters, 62 NY2d 317, 322 [1984].)
Child sex abuse is today recognized as a pervasive wrong. According to an extensive article in Newsweek (May 14, 1984), the problem is so widespread that "somewhere between 100,-000 and 500,000 American children will be [sexually] molested this year.”
Notwithstanding the pervasiveness and enormity of the wrong, a significant percentage of child abuse cases are either dismissed before trial or result in acquittals as a result of problems attending the testimony of children: that is, either the children cannot testify at all without having a total emotional breakdown or their testimony in the strange setting of a courtroom in the presence of their victimizer is hesitant, forgetful and inconsistent. (See, State v Sheppard, 197 NJ Super 411, 484 A2d 1330, supra; State v Melendez, 135 Ariz 390, 661 P2d 654 [1982]; Ordway, Proving Parent-Child Incest: Proof at Trial Without Testimony in Court by the Victim, 15 U Mich JL Ref 131 [Fall 1981]; 98 Harv L Rev 806, op. cit.; Studies Find Abuse of Children is Widespread, NY Times, May 13, 1982.)
Psychologists have recognized that the testimonial experience is itself traumatic for the child and probably results in long-term emotional harm. (See, Libai, The Protection of the Child Victim of a Sexual Offense in the Criminal Justice System, 15 Wayne L Rev 977 [1969].)
In this regard the Supreme Court has held that safeguarding the physical and psychological well-being of a minor and protecting minor victims of sex crimes from further trauma and embarrassment are "compelling” State interests. (Globe *1024 Newspaper Co. v Superior Ct., 457 US 596 [1982]; see also, People v Kahan, 15 NY2d 311, 312 [1965] [characterizing society’s interest in protecting the welfare of children as "transcendent”].)
In Globe Newspaper (supra), the court considered a mandatory closure statute that excluded the press and general public from the courtroom during the testimony of minor sex offense victims. Holding that the mandatory rule which required no particularized determinations in individual cases violated the 1st Amendment, the court emphasized the narrowness of its ruling (457 US, at p 611, n 27). "[F]or it is clear that the circumstances of the particular case may affect the significance of the [State] interest. A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim’s age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives * * * [The State’s] interest could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State’s legitimate concern for the well-being of [a child] necessitates closure. Such an approach ensures the constitutional right of the press and public to gain access to criminal trials will not be restricted except where necessary to protect the State’s interest.” (Globe Newspaper Co. v Superior Ct., 457 US, at pp 608-609.)
CPL article 65 does not provide for a mandatory use of closed-circuit television for certain child witnesses. Instead, it is to be applied only after a particularized examination of all the circumstances concerning the impact of public testimony in the presence of the defendant upon the emotional health of the child. Indeed, in the PRACA case 14 children testified at trial, but only 3 resorted to the closed-circuit television mechanism.
In balance then, the compelling State interests involved with the protection of the emotional well-being of child sex offense victims and the need for their testimony to ensure successful prosecutions more than outweigh any infringement of defendant’s right of confrontation arising out of the selective utilization of closed-circuit television.
Several cases have addressed the use of electronic devices for the presentation of evidence in child sex abuse cases and their bearing upon defendant’s right of confrontation. State v *1025 Sheppard (197 NJ Super 411, 484 A2d 1330, supra) held that the use of closed-circuit video to present the testimony of a 10-year-old victim in the prosecution of a defendant for sexual abuse was permissible. The court stated that in allowing the video procedure: "it is accepted as a fact that only a modest erosion of the clause, if any, will take place. The child, through the use of video, will not be obliged to see the defendant or to be exposed to the usual courtroom atmosphere. Nevertheless, the defendant as well as the judge, the jury, and the spectators, will see and hear her clearly. Adequate opportunity for cross-examination will be provided. This is enough to satisfy the demands of the confrontation clause. If it is not, it represents a deserved exception. It is more than Wigmore would require. Everything but 'eyeball-to-eyeball’ confrontation will be provided. No case has held eye contact to be a requirement. It is not demanded when a witness 'confronts’ a defendant in the courtroom. No court rule requires eye contact and courtroom distances sometimes make such contact impossible.” (State v Sheppard, 197 NJ Super, at p 433, 484 A2d, at p 1343.) If the procedure in Sheppard (supra) passed constitutional muster, the present situation presents an even stronger case, as the witness will be able to see an image of the defendant, Judge and jury. (See also, New Jersey Div. v S.S., 185 NJ Super 3, 447 A2d 183 [1982]; State v Melendez, 135 Ariz 390, 661 P2d 654, supra.)
In Hochheiser v Superior Ct. (161 Cal App 3d 777, 208 Cal Rptr 273 [2d Dist 1984]) the court refused to allow the use of closed-circuit television to allow minor victims to testify at a trial alleging child abuse due to the absence of specific statutory enabling legislation. Such a procedure should be used " 'only upon the considered judgment of the Legislature.’ ” (161 Cal App 3d, at p 784, 208 Cal Rptr, at p 284, citing Reynolds v Superior Ct., 12 Cal 3d 834, 837, 117 Cal Rptr 437, 438 [1974].) Similarly, in New York, although a court recognized the necessity for a procedure "which would obviate [a] need to compel a reluctant child to testify to allegations of a highly disturbing nature in the presence of the parent who allegedly committed the acts of sexual abuse upon, or * * * in the presence of the child”, it had to deny an application to hear the child witness’ testimony in camera because there was no statutory provision permitting the court to take a child’s testimony in any manner other than as sworn testimony in court and in the respondent’s presence. (Matter of S. Children, 102 Misc 2d 1015, 1019 [Fam Ct, Kings County, 1980].) That *1026 case can be further distinguished from the present case in that there the accused would be completely excluded from seeing or hearing the child’s testimony and would have no opportunity to judge the witness’ demeanor since no electronic device would be utilized. In the present case, the parties at either end of the closed-circuit television would be able to hear and see and be heard and seen by each other.
Defendant relies primarily upon the Eighth Circuit decision in United States v Benfield (593 F2d 815, supra) in support of the proposition that his right of confrontation was violated. In that case, defendant was convicted of misprision of felony for his failure to report an abduction by others. The Government requested that the victim not be required to endure a trial situation or face the defendant, due to psychiatric problems directly related to her abduction. Instead, a video tape deposition of the victim’s testimony was admitted into evidence. Defendant was excluded from the room in which the deposition took place, but could observe the victim through a one-way glass, and could communicate with his attorney through an audio device. The deponent, however, was unaware of the defendant’s presence in the building; in fact the trial court ordered that defendant not be within the vision of the witness. (593 F2d, at p 817.) In holding that this procedure violated defendant’s 6th Amendment right of confrontation, the appellate court stated, "Normally the right of confrontation includes a face-to-face meeting at trial at which time cross-examination takes place * * * While some recent cases use other language, none denies that confrontation required a face-to-face meeting in 1791 and none lessens the force of the sixth amendment. Of course, confrontation requires cross-examination in addition to a face-to-face meeting * * * The right of cross-examination reinforces the importance of physical confrontation. Most believe that in some undefined but real way recollection, veracity, and communication are influenced by face-to-face challenge. This feature is a part of the sixth amendment right additional to the right of cold, logical cross-examination by one’s counsel.” (593 F2d, at p 821.)
However, Benfield (supra) is distinguishable from the present situation. In holding the use of video to be constitutionally permissible for the testimony of a child abuse victim, State v Sheppard (supra) distinguished Benfield in that the latter concerned a deposition, the jury was not present to observe the actual testimony, the victim was an adult, not a child, and the charge did not involve sexual abuse. (State v Sheppard, *1027 197 NJ Super 411, 484 A2d 1330, 1337, supra.) Other facts in the current case distinguish Benfield even further: specific legislation calls for this procedure and the procedure dictates two-way observation. Whereas the witness in Benfield was deceived as to the accused’s monitoring of her, here images of both the defendant and jury were simultaneously broadcast to the testifying witnesses. (See, CPL 65.30 [2].)
Benfield (supra) in fact acknowledged the two-way closed-circuit television procedure utilized in this trial could well satisfy the confrontation clause. The court pointed out, "Today’s decision should not be regarded as prohibiting the development of electronic video technology in litigation * * * [W]here the procedure more nearly approximates the traditional courtroom setting, our approval might be forthcoming.” (593 F2d, at p 821.) The court further stated, "It is possible that face-to-face confrontation through two-way closed circuit television might be adequate. By a four to three vote, the Missouri Supreme Court has approved the use of such testimony by an expert witness in a case involving violation of a municipal ordinance, despite a defense based on the sixth amendment. Kansas City v. McCoy, 525 S.W.2d 336 (Mo. 1975). Among the more disturbing aspects of the decision is that there was no showing of extraordinary circumstances necessitating reliance on the procedure.” (United States v Benfield, 593 F2d, at p 822, n 11.)
In addition, Benfield (supra) suggested that child sex abuse cases might be an appropriate instance to separate the defendant from the victim. It acknowledged "that the alleged involvement of a defendant charged with a crime against persons could be so heinous as to excuse the victim from facing him while testifying,” but that "the present case does not involve conduct of that magnitude.” (593 F2d, at p 821.) The court then cited to State v Ritchey (107 Ariz 552, 490 P2d 558 [1971]) where it was held permissible to examine the competency of a seven-year-old child abuse victim in the absence of the defendant.
An historical purpose of the confrontation clause is the advancement of the "search for truth by guaranteeing the reliability of the evidence submitted against a criminal defendant”. (People v Egan, 78 AD2d 34, 38, supra, citing California v Green, 399 US 149, 156-160, supra.) "The clause contemplates that reliability will be guaranteed by the use of cross-examination, the penalties against perjury and the jury’s in-person evaluation of the witness. But these are not the only *1028 ways to guarantee reliablity” (78 AD2d, at p 38). The closed-circuit television procedure preserves the essential elements of confrontation: the opportunity to observe the witness’ demeanor, to impress the witness with the seriousness of the matter to ensure truthfulness, and the right to cross-examine. This provides "all that the Sixth Amendment demands: 'substantial compliance with the purposes behind the confrontation requirement.’ ” (Ohio v Roberts, 448 US 56, 69, supra, quoting California v Green, 399 US, at 166.)
Accordingly, for all reasons heretofore set forth, the People’s motion pursuant to CPL article 65 for the use of live closed-circuit television is granted on the ground that the statute does not violate defendant’s constitutional right of confrontation.

. Defendant was indicted by a Bronx Grand Jury on September 20, 1984. His trial commenced with the selection of the jury on September 23, 1985.

. Although article 65 mandates a hearing only when a pretrial motion is made to have a child declared a vulnerable child witness (see, CPL 65.20 [1], [5]); the court thought it appropriate in this case to receive additional evidence regarding the emotional condition of the child witness.

. On December 8, 1985, the jury returned a verdict of guilty on 23 counts of rape, sodomy or sexual abuse involving five of the children. It acquitted the defendant on 32 other counts. Twenty-nine counts had previously been dismissed by the court on a trial order of dismissal on the ground that the evidence with respect thereto was legally insufficient. Subsequently on January 15, 1986 defendant was sentenced to consecutive terms of imprisonment which aggregated to a minimum term of 29% years and a maximum term of 89 years. By operation of law (Penal Law § 70.30 [1] [c]), this term was reduced to the minimum of 25 years to a maximum of 50 years.

. In addition to Athena Perez, two other children, Kryshima Searcy and Tomika Kee, were later determined by the court to be vulnerable child witnesses. Their testimony was also taken by closed-circuit television outside the presence of the jury and the defendant.

. The robing room immediately behind and connected to the main courtroom was utilized as the testimonial room.

. Two Assistant District Attorneys prosecuted this case against the defendant who was represented by two defense counsel.