THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOYCE HENDERSON, Appellant.

Second Department, April 16, 1990

## APPEARANCES OF COUNSEL

*Philip L. Weinstein (Kevin F. Casey* and *David J. Williams* of counsel), for appellant.

*John J. Santucci, District Attorney (Gary Fidel* of counsel), for respondent.

## OPINION OF THE COURT

BROWN, J. P.

On this appeal from her conviction following trial on charges of sodomy and sexual abuse involving two young children, the defendant challenges the court's employment of the procedures authorized under CPL article 65 which permit the taking of the testimony of a child witness through the use of live, two-way closed-circuit television. For the reasons that follow, we conclude that article 65 was applied in this case in such a manner as to result in the deprivation of the defendant's right to confrontation under the Federal and State Constitutions *(see,* US Const 6th and 14th Amends; NY Const, art I, § 6). Accordingly, we reverse the defendant's conviction and order a new trial.

## I

On the evening of September 15, 1985, six-year-old Erica W. asked her mother if she could spend the night at the home of the defendant, a neighbor, so that she could play with the defendant's daughter and with five-year-old Raheem L., the child of another neighbor, for whom the defendant babysat. During the course of the evening, the defendant is alleged to have sodomized and sexually abused both Erica and Raheem. She was subsequently charged with two counts of sodomy in the first degree, nine counts of sexual abuse in the first degree, and two counts of endangering the welfare of a child.

Prior to the trial, the People moved pursuant to CPL article 65 for a declaration that Erica and Raheem were vulnerable witnesses as that term is defined in CPL 65.10 (1). A hearing on the application was held in March 1986. The primary witness for the People at the "vulnerability" hearing was Flora Colao, a social worker who was qualified as an expert in the field of the aftermath and affects of sexual abuse on child victims. Ms. Colao testified that she had interviewed each of the children twice, once in November 1985 and again in February 1986. She stated that Raheem, who was born on January 5, 1980, was reluctant to talk about the incident, explaining that he "felt bad" and "it was nasty", but that through the use of anatomically correct dolls, Raheem indicated that the defendant put his penis in her mouth, and that he was afraid she was going to bite it off. She testified further that Raheem told her that the defendant had played with his penis many times during the month that she babysat for him while his mother was at work. Talking about the defendant, according to Ms. Colao, gave Raheem a stomachache, and he was afraid that she was going to send monsters to get him. When asked if she had formed an opinion as to whether Raheem would benefit by testifying through the use of two-way closed-circuit television, Ms. Colao responded affirmatively, and asked the court to take into consideration the fact that the defendant was a figure of authority and that Raheem was alternatively frightened of and angry with her, that Raheem had indicated that there had been multiple incidents of sexual abuse, and that Raheem continued to have nightmares.

Ms. Colao testified further that although Erica appeared to her to be less "vulnerable" than Raheem, basically, by virtue of the fact that she was a year older than him, and that she

did not experience multiple incidents of abuse, it was her opinion that Erica, too, would benefit from testifying by way of closed-circuit television. She stated that Erica indicated that she was fearful of the defendant, and thinking about what the defendant did to her and what she saw the defendant do to Raheem made her nauseous. Ms. Colao added that the defendant was an authority figure in that she occasionally babysat for Erica, and as a result of this incident, Erica was experiencing sleeping and eating disorders. Ms. Colao concluded that it would be difficult to get testimony in open court from Raheem or Erica.

At the conclusion of the hearing, at which the defendant presented no witnesses and the children did not testify, the court declared that Raheem and Erica were vulnerable child witnesses and authorized the taking of their testimony by means of live, two-way closed-circuit television. The court, in its decision, adopted the reasoning of the court in *People v Algarin* (129 Misc 2d 1016) in concluding that CPL article 65 did not violate any of the rights guaranteed the defendant under the Federal and State Constitutions *(see, People v Henderson,* 132 Misc 2d 51, 52-53). It then addressed the issue of whether, under article 65, the use of two-way closed-circuit television was appropriate in this case. After reviewing the hearing testimony and the standards required to be met before a vulnerability declaration could be made *(see,* CPL 65.10 [1]; 65.20),* the court concluded that the People had established, by clear and convincing evidence, the existence of several of the factors denoted by the Legislature as important in determining the existence of extraordinary circumstances which would cause a child witness to suffer severe mental or emotional harm *(see,* CPL 65.20 [9]). Specifically, the court found that both children were particularly young (CPL 65.20 [9] [b]), that the defendant, as a baby-sitter, occupied a position of authority with respect to the children (CPL 65.20 [9] [c]; 65.00 [6]), that the offenses charged were part of an ongoing course of conduct committed by the defendant against the

---

* CPL 65.10 (1) provides that "[a] child witness shall be declared vulnerable when the court, in accordance with the provisions of section 65.20, determines by clear and convincing evidence that it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such live, two-way closed-circuit television will help prevent, or diminish the likelihood or extent of, such harm."

children (CPL 65.20 [9] [d]), and that, according to expert testimony, the children would be particularly susceptible to psychological harm if required to testify in open court or in the presence of the defendant (CPL 65.20 [9] *[l]*). The court concluded *(People v Henderson, supra,* at 58-59):

"Although the People need only prove the causal relationship between the evidence and one factor *[see,* CPL 65.20 (11)], in the instant case, however, it is clear to the court what the effect this incident has had on both children (i.e., bad dreams, stomachaches). It is uncontroverted that both children are extremely frightened of the defendant and if placed in the same room as the defendant while testifying, said children would suffer extraordinary psychological harm.

"This court finds that the People have met their burden by 'clear and convincing evidence' *(see,* CPL 65.10 [1]).

"Accordingly, the court is satisfied that [both children] are vulnerable child witnesses.

"Under the facts and circumstances of the case at bar as set forth hereinabove, the court finds that placing the defendant and the child witnesses in the same room during the testimony of the child witnesses will contribute to the likelihood that both Raheem and Erica will suffer further severe mental or emotional harm. In addition, the court finds that the defendant's constitutional rights to an impartial jury or of confrontation will not be impaired if the defendant remains in the courtroom during the testimony of the vulnerable child witnesses".

Pursuant to the court's ruling, at the trial Erica and Raheem testified from the trial court's robing room by means of two-way closed-circuit television. They were joined in the robing room by the prosecutor and the defense counsel, but the defendant, the Trial Judge and the jury remained in the courtroom. Neither of the children was able to identify the defendant by viewing her over the television monitor. This was apparently due, in part, to the size and lack of clarity of the transmission viewed by the children. It should be noted that the defendant voiced no objection to the transmission. She was, however, with her consent, identified through a

photograph taken of her at the time of her arrest. At the conclusion of the children's testimony, the court had each juror observe the room from which the children had testified, and asked each to view the courtroom through the television monitor as the children had.

The defendant was convicted of two counts of sodomy in the first degree, eight counts of sexual abuse in the first degree and two counts of endangering the welfare of a child. She was subsequently sentenced to concurrent terms of $8\frac{1}{3}$ to 25 years' imprisonment for each sodomy conviction, concurrent terms of $2\frac{1}{3}$ to 7 years' imprisonment on each sexual abuse count, and concurrent terms of one year imprisonment for each endangering the welfare of a child count. The court further provided that the terms of imprisonment imposed for sodomy and those imposed for sexual abuse were to run consecutively.

## II

■ The defendant's initial contention is that CPL article 65, an experimental statute (see, L 1985, ch 505, as amended by L 1988, ch 516, § 1) designed to facilitate the prosecution of sex abuse cases in which the victims are children, by allowing the children, in certain cases, to avoid the trauma of testifying in open court and in the presence of the defendant, is facially unconstitutional because it violates her right to confrontation. Since the argument of this appeal, however, this issue was addressed by the Court of Appeals, which has concluded that article 65 contains sufficient safeguards so as to be construed to withstand an attack upon its facial constitutionality (see, *People v Cintron,* 75 NY2d 249).

## III

■ The issue thus before us is whether the defendant was deprived of her constitutionally guaranteed right to confrontation by virtue of the manner in which article 65 was applied in this case. We conclude, upon our review of the record herein, that the court's finding of vulnerability with respect to Erica and Raheem is not supported thereby, and we, accordingly, find that the trial court's application of article 65 resulted in a deprivation of the defendant's right to confront the witnesses against her.

The Confrontation Clause guarantees a defendant the right to meet his or her accusers face-to-face before the trier of fact. This guarantee strives to ensure the integrity of the fact-

finding process, *inter alia,* by requiring the witnesses to confront the defendant at trial, by permitting the defendant to look upon those witnesses, and by permitting the trier of fact to view this confrontation. The protection afforded by the express language of the Confrontation Clause, as opposed to its implications, cannot be understated. "That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs" *(Coy v Iowa,* 487 US 1012, 1020). Thus, the Supreme Court in *Coy v Iowa (supra)* determined that an Iowa statute which permitted child witnesses, in certain circumstances, to testify from behind a screen through which they could be viewed by the defendant, violated the Confrontation Clause. The statute at issue in *Coy* created a presumption of trauma in cases such as those involving the sexual abuse of children. The *Coy* court held that this legislatively created presumption was not sufficient to warrant the granting of an exception "to the irreducible literal meaning of the [confrontation] clause: 'a right to *meet face to face* all those who appear and give evidence *at trial' California v. Green,* 399 U.S., at 175, 90 S. Ct., at 1943-1944 (Harlan, J., concurring) (emphasis added)" *(Coy v Iowa, supra,* 487 US, at 1021). "Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception" *(Coy v Iowa, supra,* 487 US, at 1021).

As the Court of Appeals recently held, however, neither the State nor the Federal Constitution provides a defendant with the absolute right to total eye-to-eye confrontation in the defendant's physical presence *(see, People v Cintron, supra,* at 257). The court concluded that where an appropriate individualized showing of necessity is made and the infringement on the defendant's confrontation rights is kept to a minimum, the use of closed-circuit television technology is not constitutionally proscribed *(People v Cintron, supra,* at 258). It is that individualized showing of necessity which we find to be lacking in the instant case.

As previously indicated, article 65 establishes a procedure whereby a witness in a case involving sexual abuse who is 12 years old or younger may testify by way of two-way closed-circuit television when the court "determines by clear and

convincing evidence that it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such live, two-way closed-circuit television will help prevent, or diminish the likelihood or extent of, such harm" (CPL 65.10 [1]). The statute provides the court with a list of factors, a finding of one or more of which, by clear and convincing evidence, it may consider "in determining whether there are such extraordinary circumstances as would cause the child witness to suffer severe mental or emotional harm" (CPL 65.20 [9]). The court is then required to "make findings of fact which reflect the causal relationship between the existence of any one or more of [those factors] * * * which the court finds are established and the determination that the child witness is vulnerable" (CPL 65.20 [11]). This finding, coupled with a finding that, "under the facts and circumstances of the particular case, the defendant's constitutional rights to an impartial jury or of confrontation will not be impaired"(CPL 65.20 [11]), permits the court to enter an order allowing for closed-circuit television testimony. The defendant and the child witness must remain in the same room unless the court further finds that keeping them in the same room "will contribute to the likelihood that the child witness will suffer severe mental or emotional harm" (CPL 65.20 [12]).

In making its finding of vulnerability, the hearing court relied primarily on the testimony of social worker Flora Colao and her impressions of Erica and Raheem, since it had not interviewed the children itself. Upon reviewing Ms. Colao's testimony, however, we are left with the impression that she is of the opinion that all child witnesses in sexual abuse cases are vulnerable, that is, are subject to severe mental and emotional harm if forced to testify in open court in the presence of the alleged perpetrator. According to Ms. Colao, all sexually abused children would benefit by testifying outside of the accused's presence and outside of the imposing atmosphere of a courtroom. Unfortunately, Ms. Colao's testimony lacked anything that would indicate why Erica and Raheem particularly would suffer severe and emotional harm if forced to testify in open court (see, Wildermuth v State, 310 Md 496, 524, 530 A2d 275, 289 [the psychologist's opinion that the defendant's nine-year-old daughter would find it hard to respond to questions put to her in open court and that it

would be a very frightening experience for her was insufficient to warrant the use of closed-circuit television; "testimony about the likely impact on the particular child must be specific and must show much more than mere nervousness or excitement or some reluctance to testify"]; *State v Vincent,* 159 Ariz 418 [a letter from the Foster Review Board, stating that the defendant's six- and eight-year-old children would suffer psychological damage if forced to testify against him in connection with their mother's murder, did not contain sufficiently particularized evidence concerning the likely impact of courtroom testimony on the children]). In fact, Ms. Colao appears to be the vehicle through which the statutory presumption disapproved of in *Coy (supra)* was superimposed upon article 65 in this case. Her testimony reveals that of which we are all aware—that it is very difficult for a sexually abused child to testify in the presence of the accused and in a courtroom setting. It does not establish, however, that extraordinary circumstances exist in this case such that Erica and Raheem will suffer severe mental or emotional harm if they are forced to give such testimony. Clearly, these children have been emotionally harmed by the abuse which they are alleged to have suffered at the hands of the defendant, as are all children who have been sexually abused. However, there is nothing in the record to indicate that Erica and Raheem, unlike other children similarly situated, would suffer *further* and *severe* mental or emotional harm if not permitted to testify through the use of closed-circuit television *(cf., State v Jarzbek,* 210 Conn 396, 554 A2d 1094 [the defendant's five-year-old daughter stated that she could not talk about the "game" they played together in front of him; she expressed fear that she would never see her father again if she testified against him]; *State v Taylor,* 562 A2d 445 [RI] [the seven-year-old victim, to whom the defendant was a stranger, froze with fear and was unable to communicate upon taking the witness stand; one year after the incident she was still afraid of being separated from her mother, afraid of being alone and afraid to have the doors and windows unlocked, and she believed that after he got out of prison, the defendant, who had kidnapped her from her bedroom, would track her down and kill her]; *State v Thomas,* 150 Wis 2d 374, 442 NW2d 10 [the eight-year-old victim had been repeatedly sexually assaulted, as well as whipped with an extension cord and a belt. Even while sitting on her mother's lap, she had great difficulty testifying, and covered her face when asked about the defendant]). Moreover,

the existence of some of the factors contained in CPL 65.20 (9), "while consistent with the likelihood that the child will suffer 'severe mental or emotional harm', simply [does] not prove it" *(People v Cintron, supra,* at 266). In short, there is nothing "extraordinary" in this case which would warrant making an exception "to the irreducible literal meaning of the [confrontation] clause" *(Coy v Iowa, supra,* 487 US, at 1021, at 2803). Cognizant as we are of the trauma experienced by all sexually abused children and the hesitancy with which they testify against their abusers, given the inestimable importance of face-to-face confrontation to the fact-finding process, article 65 should clearly be the exception, and not the rule, in dealing with child witnesses in sexual abuse cases. It has not been established by clear and convincing evidence that that exception is appropriate in this case.

Our conclusion is further supported by a review of the videotaped testimony of Erica and Raheem. Although both were understandably reluctant to answer questions about the particulars of their alleged encounter with the defendant, they did not exhibit a general reluctance to testify. Indeed, Raheem seemed somewhat pleased with all the attention that he was receiving and when asked to approach the television set to attempt to identify the defendant, both children walked to the screen without trepidation.

This brings us to a further problem present in this case. When called upon to identify the defendant by viewing the image of the courtroom on the television screen, neither Erica nor Raheem was able to identify her, although they both were clearly acquainted with her. While this may have been attributable, in part, to the fact that the defendant's appearance had changed somewhat between the time of the alleged incident and the time of trial, the prosecutor did indicate that the images projected on the screen were rather small, and that "[i]f you look on the screen, the picture is very difficult". Indeed, the trial court noted that the picture of the defendant shown on the television screen "is not a very true and accurate representation of defendant, were she to be viewed by the child witness". Although the defendant did not object to the quality of the television transmission, it bears noting that article 65 directs that closed-circuit television procedures shall not be employed if the available equipment "is technologically inadequate to protect the constitutional rights of the defendant" (CPL 65.30 [4]). As the Court of Appeals stated in *People v Cintron (supra,* at 261, n 6), "the Constitution requires that

the People demonstrate that the television setup employed in any given case ensures the jury's ability to assess the demeanor, and thus the credibility, of the vulnerable child witness". No such showing appears on the record before us.

Thus, we conclude that the defendant was denied her right to confrontation when the complainants were permitted to testify through the use of two-way closed-circuit television. Moreover, under the circumstances of this case, this error may not be considered harmless (see, Coy v Iowa, 487 US 1012, 108 S Ct 2798, supra).

## IV

■ Given that a new trial must be held, we deem it appropriate to address two issues raised by the defendant which may occur upon such retrial. Firstly, we conclude that the trial court did not improvidently exercise its discretion in permitting Erica and Raheem to testify under oath (see, CPL 60.20 [2]), as the record establishes that they understood that they were obligated to tell the truth and that they understood the nature of the oath (see, People v Obair, 138 AD2d 750; People v Fernandez, 138 AD2d 733). Secondly, we hold that the trial court did not improvidently exercise its discretion by permitting Flora Colao to testify at trial as an expert witness with respect to whether the children suffered from sexually abused child syndrome (see, People v Cintron, supra; Matter of Nicole V., 71 NY2d 112; People v Taylor, 142 AD2d 410).

The defendant's remaining contentions need not be reached.

Accordingly, the judgment is reversed, on the law and the facts, and a new trial is ordered.

LAWRENCE, HARWOOD and BALLETTA, JJ., concur.

Ordered that the judgment is reversed, on the law and the facts, and a new trial is ordered.