■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEOBALDO GUCE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Bambrick, J.), rendered December 19, 1988, convicting him of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree (two counts), incest, and endangering the welfare of a child (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed, and the case is remitted to the Supreme Court, Queens County, for further proceedings pursuant to CPL 460.50 (5).

A preschool physical examination of the defendant's then five-year-old daughter Jane (pseudonyms have been adopted in the interest of protecting the children) revealed signs of both vaginal and anal abuse. This was reported to the Bureau of Child Welfare and the defendant's three children, Jane; Mary, then age seven; and John, age two, were placed in foster care. After a period of time, Jane told her foster mother that the defendant, her father, had penetrated her both vaginally and anally on a hot night in June when she and Mary were sleeping on a mattress in their parents' bedroom. Prior to trial, the District Attorney made a motion to have Jane and Mary declared vulnerable witnesses and to permit them to testify from a testimonial room by means of live, two-way, closed-circuit television pursuant to CPL article 65. Following an extensive hearing, the court declared that these children were vulnerable witnesses, and granted the application for the use of live, two-way, closed-circuit television (CPL 65.20 [11]). The court also found that placing the defendant in the same room as the children during their testimony would contribute to the likelihood that the children would suffer severe emotional harm *(see,* CPL 65.20 [12]). Consequently, the court directed that the defendant remain in the courtroom during the testimony of the children. The defendant now contends that these procedures violated his constitutional right to confrontation *(see,* US Const 6th, 14th Amends; NY Const art VI). We disagree and affirm the judgment of conviction.

The defendant contends that in *Coy v Iowa* (487 US 1012), the Supreme Court held that the confrontation clause must be read literally and can only be satisfied by a face-to-face meeting between the defendant and the witnesses. The Court of Appeals of this State has rejected such a rigid interpretation of *Coy* and refused to adopt such a categorical rule under the State Constitution *(see, People v Cintron,* 75 NY2d 249, 257). Any lingering concern as to the facial constitutionality of CPL article 65 has been dispelled by the recent decision of the United States Supreme Court in *Maryland v Craig* (497 US —, 110 S Ct 3157), which held that a similar Maryland statute permitting young, child abuse victims to testify over one-way, closed-circuit television in the absence of face-to-face confrontation with the defendant did not violate the defendant's right to confrontation. In *Craig,* the Supreme Court held that "the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant" *(Maryland v Craig,* 497 US, *supra,* at —, 110 S Ct, *supra,* at 3169), provided that the State establishes a case-specific finding of necessity. This is precisely what CPL article 65 requires. Furthermore, the defendant's right to face-to-face confrontation will not give way unless the court first finds that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. This is the specific mandate of CPL 65.20 (12), and such a finding was made by the hearing court in this case. In *Cintron (supra)* it was held that CPL article 65 mandates: (1) an appropriate individualized showing of necessity, and (2) the minimization of the infringement of the defendant's confrontation rights, thus defeating any claim of facial unconstitutionality. Furthermore, *Maryland v Craig (supra),* in sanctioning the use of *one-way,* closed-circuit television, would seem to remove the concern expressed in the concurring opinion in *Cintron* that the witness is testifying outside the actual presence of the trier of fact *(see, People v Cintron, supra,* at 269). Thus, it is clear that CPL article 65 is facially constitutional.

Turning now to the application of the procedures set forth in CPL article 65 to the case before us, we find no violations of the defendant's right to confrontation *(cf., People v Henderson,* 156 AD2d 92). At a hearing held before trial pursuant to CPL 65.20, the prosecution relied primarily upon the testimony of a certified social worker who specialized in working with

sexually abused children and their families. Such testimony was not only appropriate, but of great assistance in determining whether or not it was likely that these children would suffer severe mental or emotional harm, as the result of extraordinary circumstances, if required to testify without the use of two-way, closed-circuit television (see, CPL 65.10 [1]). This testimony was clear and convincing in establishing that: (1) the offenses were committed in a particularly heinous manner (see, CPL 65.20 [9] [a]), (2) the child witnesses, Jane, age six at the time of trial, and Mary, age eight, were particularly young (see, CPL 65.20 [9] [b]), (3) the defendant, their father, occupied a position of authority with respect to these witnesses (see, CPL 65.20 [9] [c]), (4) there was an express threat by their mother that they would be responsible for the incarceration of their father and the dissolution of their family if they continued to cooperate with the prosecution (see, CPL 65.20 [9] [h]), and (5) the children felt abandoned by both their father and mother and would be particularly susceptible to psychological harm if required to testify in open court or in the physical presence of the defendant (see, CPL 65.20 [9], [12]). Thus, five of the 12 factors set forth in CPL 65.20 (9) were established and the hearing court was justified in concluding that there were extraordinary circumstances present in this case.

This expert witness described not only the fear of testifying which these children have, but also the severe emotional harm which they have already sustained (i.e., helplessness and guilt because they are causing potential damage to their father and are responsible for the dissolution of their family). Most importantly, the expert gave a detailed opinion of the psychological harm which the children would suffer if they were required to testify in open court. Similarly, the hearing evidence demonstrated that the children would be more likely to suffer severe emotional harm if they were compelled to be in the same room as the defendant while testifying (see, CPL 65.20 [12]). In addition to the foregoing evidence, it should also be noted that the hearing court took advantage of the opportunity to speak with the children in chambers.

A fair reading of the minutes sustains the findings of the hearing court that (1) there are extraordinary circumstances present in this case (see, CPL 65.20 [9]), (2) these circumstances would cause Jane and Mary to suffer severe emotional harm (see, CPL 65.20 [9]), (3) there is a causal relationship between the factors evincing the extraordinary circumstances and the likelihood that these children would suffer severe

emotional harm *(see,* CPL 65.10 [1]; 65.20 [11]), (4) the defendant's constitutional right to confrontation would not be unduly impaired by permitting the children to testify by means of two-way, closed-circuit television *(see,* CPL 65.20 [11]), and (5) having the defendant and the children in the same room during their testimony would contribute to the likelihood that these children would suffer severe emotional harm *(see,* CPL 65.20 [12]). Hence, it is apparent that there are individualized showings of necessity in this case warranting both the abrogation of a literal reading of the confrontation clauses and the minimum infringement of the defendant's confrontation rights *(see, Maryland v Craig, supra; People v Cintron,* 75 NY2d 249, *supra; People v Henderson,* 156 AD2d 92, *supra).* In this respect, this case is factually distinguishable from our recent holding in *People v Henderson* (156 AD2d 92, *supra).*

Unlike the situation in *People v Henderson (supra),* where the testimony of the prosecution's expert witness suggested that every sexually abused child is to be considered "vulnerable" within the meaning of CPL article 65, the People's expert specifically testified in this case that she had interviewed at least 100 children with regard to CPL article 65 applications and had found vulnerability to exist in only half of those cases. Moreover, the hearing court's decision was not based simply upon the children's reluctance or fear to testify in the presence of the defendant. The defendant's constitutional right of confrontation cannot be sacrificed solely on such a basis *(see, Coy v Iowa,* 487 US 1012, *supra; People v Cintron, supra,* at 265; *People v Henderson, supra).* Rather, the decision in this case was solidly founded upon clear and convincing evidence that Jane and Mary, because of the extraordinary circumstances of this case, were vulnerable and likely to suffer severe emotional harm if compelled to testify in the presence of the defendant. Accordingly, the record amply supports the use of live two-way, closed-circuit television in the present case.

Contrary to the defendant's contention, we find that the court did not err in permitting eight-year-old Mary to give sworn testimony, as the record establishes that she appreciated the difference between the truth and a lie and her duty to tell the former *(see, People v Nisoff,* 36 NY2d 560; *People v Henderson,* 156 AD2d 92, *supra; People v Fernandez,* 138 AD2d 733). Nor did the court err in permitting six-year-old Jane to give unsworn testimony, as such a determination is left to the court's discretion and the record supports the court's finding that she possessed the requisite intelligence and capacity to

give such testimony *(see, People v Parks,* 41 NY2d 36; CPL 60.20 [2]). There was also no error in permitting the child witnesses to testify with the use of anatomically correct dolls *(see, People v McGuire,* 152 AD2d 945; CPL 60.44).

Furthermore, to the limited extent it has been preserved for appellate review, the defendant's claim that he was denied a fair trial by the testimony of an expert witness regarding posttraumatic stress syndrome is unavailing. It is well settled that such expert testimony may be properly admitted, inasmuch as the reactions of a victim to an incident of sexual abuse are not within the ken of a typical juror *(see, People v Cintron,* 75 NY2d 249, *supra; People v Taylor,* 75 NY2d 277; *People v Henderson, supra).* The record also demonstrates that the People called the expert primarily for the purpose of having her testify in general terms regarding the phenomenon of child sexual abuse syndrome and the manner in which this disorder might explain a victim's reluctance or delay in speaking about an incident of abuse *(see, People v Taylor, supra).* Hence, the expert's testimony was not offered solely for the purpose of establishing that the sexual offenses in this case had in fact occurred *(cf., People v Banks,* 75 NY2d 277, 293).

The recent decision of the United States Supreme Court in *Idaho v Wright* (497 US —, 110 S Ct 3139) also fails to support the defendant's position. While a single hearsay allegation of abuse was related by the expert witness herein, this objectionable testimony was elicited, albeit inadvertently, by the defendant's counsel during his cross-examination regarding the specific symptoms exhibited by the children involved in this case. We find that the potential for prejudice created by the hearsay allegation was not so great as to warrant a mistrial, and that the error was satisfactorily cured by the prompt instructions of the trial court. Accordingly, the present case bears virtually no factual resemblance to the events in *Idaho v Wright (supra),* where, with the permission of the trial court, hearsay allegations of sexual abuse were intentionally elicited by the prosecution as part of its direct case to establish both that the abuse had occurred and that the defendants therein had committed it.

We have considered the defendant's remaining contentions and find them to be either unpreserved for appellate review or without merit. We note that several of these claims (i.e., defendant's lack of access to the children) were raised in the dissent in *Maryland v Craig (supra),* but rejected by the majority. Brown, J. P., Kooper, Sullivan and Harwood, JJ., concur.