Matter of Noel O. (2007 NY Slip Op 51155(U))

[*1]

Matter of Noel O.

2007 NY Slip Op 51155(U) [15 Misc 3d 1146(A)]

Decided on June 6, 2007

Family Court, Queens County

Hunt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2007

Family Court, Queens County
In the Matter of NOEL O., A Person Alleged to be a Juvenile Delinquent, Respondent.
D-10032/07

John M. Hunt, J.
By petition filed on May 30, 2007 respondent is alleged to have committed acts which,
were he an adult, would constitute the crimes of Sexual Abuse in the First, Second and Third
Degrees and Endangering the Welfare of a Child.
The petition before the Court alleges that the respondent, Noel O. (born August 5, 1992),
subjected the alleged victim, Jessi M. (born March 8, 2002), to sexual contact as defined by
Penal Law §130.00 (3).[FN1] The fact-finding hearing commenced on June 5, 2007 and the Court
proceeded to conduct an inquiry in order to determine whether or not the five-year-old victim
was competent to give sworn testimony at the hearing. Jessi M., the alleged victim, testified at
this preliminary inquiry or "voir dire" (People v. Byrnes, 33 NY2d 343, 350-351 [1974]; People
v. Rose, 223 AD2d 607, 608 [1996]), and she was examined by counsel for the Presentment
[*2]
Agency as well as the Law Guardian for respondent.[FN2]
Jessi M. testified that she is five years old and was born on March 8th, although she could
not recall the year in which she was born. She stated that she attends school and that she has two
teachers and that she liked to color at school. Jessi stated that she colors at school but that she did
not go to school on the day of the hearing. Jessi testified that she lives with her parents and that
she has two "god sisters" named Chloe and Josie. She stated that she was in court and that there
was a judge "who listens to people" in court. In response to questions designed to establish that
she could differentiate the truth from a lie, she was asked a series of questions relating to the
colors of clothing worn by the Assistant Corporation Counsel who questioned her and clothing
she was wearing. She correctly responded to the questions and was able to state that certain
statements relating to the colors of various items of clothing were either true or "a lie." Jessi
stated that "a lie" is "something that really didn't happen" and that "truth" is "what really
happened." When asked whether the statement that she was now "on an airplane" was the truth
or a lie she stated that such a statement would be "a lie." Jessi stated that "it is good to tell the
truth" and "not good to tell a lie because her parents would be mad." Jessi related that she had
told a lie "a long time ago" when she was at "Disney World" with her family. According to
Jessi, she made a false statement to her mother while at Disney World and she was punished with
a "time out" by her mother. Jessi stated that Noel (the respondent) "told a lie because something
happened."
Jessi indicated that she "believe[d] in God" and that "God was happy" when "you are
[*3]
nice" and "God is mad if you are bad." According to Jessi, she learned about God from her
mother and learned about God herself. She stated her understanding that if she told a lie to her
mother "God would be mad even if no one knew" she had lied. Jessi indicated that she would
"feel bad" if she did something wrong. Jessi demonstrated her capacity to understand what a
promise means. If someone promised to give her a cookie, that means that the person who made
the promise would give her the cookie. Jessi also stated that it is important to keep a promise,
such as if she "promised to clean up her toys." While the child did not express an understanding
of the word "swear" and she was not asked whether she knows what an oath is, she stated that it
is important to keep a promise to God and that "if I don't tell the truth, I can get in trouble."
Jessi also stated that it is "bad if I say someone did something that they did not do" and that
it is "bad" if she "promise to tell the truth and dies not" because she "can get into trouble."
According to Jessi, a "lie" would be saying that "a person kicked me" if they really didn't
because that person "could go to jail."
On cross-examination, the child could not express her understanding about what an
attorney does in a courtroom. When questioned by the Law Guardian about the previous
questions relating to the colors of clothing people in the courtroom were wearing, she was
able to recollect the previous questions. Jessi indicated that "make believe" was similar to a
lie and that playing was like "making believe." As an example, Jessi stated that the television
cartoon character "Spongebob" was "make believe" and not a real person. Jessi indicated that
she perceived a difference between something being "a good lie" as opposed to "a bad lie."
She stated that "a good lie" would be "making things up" and "a bad lie" would be telling
things that "didn't really happen." Jessi also stated that her "mommy told me that God watched
[*4]
over me" and that "God was happy" when she was good. Jessi stated that she believed in Santa
Claus but that her family also celebrated Hanukkah. She remembered that she went to temple two
times a "long time ago" but she could not remember exactly what occurred during those visits.
The competency of a child to testify at a fact-finding hearing in a juvenile delinquency
proceeding is governed by Family Court Act §343.1 (2). That statute, like its Criminal Procedure
Law analogue, CPL §60.20 (2), reads as follows:
Every witness more than nine years old may testify only under oath unless
the court is satisfied that such witness cannot, as a result or mental disease
or defect, understand the nature of an oath. A witness less than nine years
old may not testify under oath unless the court is satisfied that he or she
understands the nature of an oath. If under either of the above provisions,
a witness is deemed ineligible to testify under oath, the witness may
nevertheless be permitted to give unsworn evidence if the court is satis-
fied that the witness possesses sufficient intelligence and capacity to justify
the reception thereof.[FN3]
"[T]here is no precise age which determines the question of competency" (United States
v. Wheeler, 159 US 523, 524 [1895]), and in New York "under CPL 60.20 (subd. 2), a rebuttable
presumption exists that an infant less than [nine] years old is not competent to be sworn" (People
v. Nisoff, 36 NY2d 560, 565-566 [1975]).[FN4]
While both Criminal Procedure Law §60.20 (2) and Family Court Act §343.1 (2)
[*5]
establish a rebuttable presumption that a child less than nine years old is incapable of giving
sworn testimony in a criminal trial or juvenile delinquency fact-finding hearing (People v.
Morales, 80 NY2d 450, 452-453 [1992]; People v. Nisoff, at 566-567), the court may permit
a child less than nine to give sworn testimony at trial if, upon a preliminary examination, the
court determines that the infant "understands the nature of an oath" (Fam. Ct. Act §343.1 [2];
Criminal Procedure Law §60.20 [2]). "The tests as to the infant's testimonial capacity and ability
to understand the nature of an oath are necessarily individualistic in nature" (People v. Nisoff, at
566), and in making that determination, the examination "typically involves several interrelated
inquiries: does the child know the difference between a lie and the truth; does the child know the
meaning of an oath; does the child understand what can happen if she tells a lie; and does the
child have the ability to recall and relate prior events" (People v. Morales, at 452; see, Kentucky
v. Stincer, at 741).
In this case, the Court had the opportunity to observe Jessi and evaluate her potential
testimonial capacity in a lengthy preliminary hearing which lasted nearly one hour and at which
she was questioned, without any interruption or need for a recess, by the prosecutor, the defense
attorney as well as by the Court. The child appeared to be an extremely mature and well-behaved
five-year-old who maintained her composure and bearings throughout a long hearing, although
she understandably became restless and tired as the hearing wore on.
The child clearly knew where she was, a courtroom, and that there was a judge present
whose function "is to listen to people". Jessi knew how old she was, identified the members
of her immediate family and household, and indicated that she attended school, that she has two
teachers and that she likes to color at school. Jessi indicated that she did not go to school on
[*6]
the day of the hearing because she was in court, although she related that she did color at the
courthouse while she was waiting for the hearing to commence.
The questions designed to indicate whether Jessi could differentiate the truth from a lie
establish that indeed, she can make that distinction. When she was asked questions relating to
the clothing worn by the prosecutor and herself she correctly stated whether the proposition was
true or false. Jessi further expressed an internal understanding of the difference between the truth
and a lie. She indicated that a lie is "something that didn't really happen" as opposed to the truth
which is "what really happened". She further stated that "it is good to tell the truth" as opposed to
telling a lie and that it is "not good to tell a lie because her parents would be mad." Jessi then
related her own experience in telling a lie to her mother while the family was at Disney World
and she recalled that she received a reprimand ("time out") for having lied to her mother. The
child then proceeded to give examples of what would constitute a lie, such as saying a person
kicked me if they didn't or saying someone did something that they did not do. Thus, the child
expressed both an abstract and an internal understanding of the concepts of truth and lie, along
with her experience that there were bad consequences for telling a lie.
The questions further established that Jessi could differentiate between reality and
fantasy. She stated that "make believe" was "playing" and that it was not real. As an example,
she related that the cartoon character "Spongebob Squarepants" was "make believe" and that
he was not actually a person. While Jessi was never asked directly whether she understood what
the term "oath" means, as observed by the Law Guardian, the questions and answers at the
hearing satisfy the Court that the child understands that she has an obligation to testify truthfully
[*7]
in court. The child expressed some basic understanding of the concept of God as a powerful
being who watches over people and who would be "mad if you lied." The child also stated her
belief that if she told a lie "God would be mad even if no one knew" and that she would "feel bad" if she told a lie or did something wrong. Jessi expressed an understanding of the concept of
a promise, that a promise meant someone would do what they say, such as a promise to give
someone a cookie or a promise to clean up her toys at home. Jessi further indicated an under-
standing that if she promised to tell the truth and she did not that she herself "could get into
trouble."
A child may give sworn testimony where the trial judge finds that the child understands
the difference between truth and falsehood, that he or she understands that there is a duty to tell
the truth in court, that there are negative consequences for lying, and that the child can
differentiate reality from fantasy. While Jessi is merely five years old, based upon the Court's
opportunity to observe the child in the course of the relatively lengthy hearing at which three
different adults, both of the attorneys and the Court, put questions to her, the Court is satisfied
that Jessi is competent to give sworn testimony at the fact-finding hearing.
While Jessi is five years of age, "[t]he precise age below which a child is considered
incompetent to testify [under oath] is not at all clear" (People v. Sinatra, 134 AD2d 738 [1987],
lv. denied 70 NY2d 1011 [1988]; see, People v. Nisoff, at 566). Thus, for example, in People v.
McIver (15 AD3d 677 [2005], lv. denied 4 NY3d 888 [2005]), a five-year-old child who was
sexually abused by the defendant was permitted to testify under oath where the court found that
she knew the difference between truth and falsehood, the necessity for telling the truth and an
understanding that she could be punished for telling a lie in court (id. at 678). Similarly, in
[*8]
Matter of Jordan E. (305 AD2d 778 [2003]), the court allowed a six-year-old sexual abuse victim
to testify under oath in a juvenile delinquency proceeding and in People v. Dehler (216 AD2d
643 [1995], lv. denied 86 NY2d 734 [1995]) and Matter of James N. (19 AD3d 1047 [2005]), the courts permitted a seven-year-old sexual abuse victim to testify under oath.
While the Law Guardian argues that Jessi was never asked whether she had any under-
standing of what the term "oath" means, an understanding of that legal term by a child witness
has never been held to be a prerequisite to permitting a child under the presumptive age to give
sworn testimony. Notably, in Matter of Frederick QQ. 209 AD2d 832 [1994], lv. denied 85
NY2d 802 [1995]), the Appellate Division held that the Family Court properly allowed an eight-
year-old sex offense victim to give sworn testimony even though the witness "did not know what
constitutes an oath'", where the witness was otherwise found competent to give sworn
testimony.
Accordingly, based upon the record as a whole, this Court is satisfied that Jessi meets the
criteria for giving sworn testimony in this proceeding and the Court finds that she may be sworn
in accordance with Family Court Act §343.1 (2).
This constitutes the decision and order of the Court.
E N T E R:
_________________________________
John M. Hunt
Judge of the Family Court
Dated: Jamaica, New York
June 6, 2007

Footnotes

Footnote 1:Penal Law §130.00 (3) defines "sexual contact" as "any touching of the sexual or other
intimate parts of a person not married to the actor for the purpose of gratifying the sexual desire
of either party. It includes the touching of the actor by the victim, as well as the touching of the
victim by the actor, whether directly or through clothing."

Footnote 2:Respondent was not present at the preliminary hearing nor did he object to his exclusion
from the hearing (see, Kentucky v. Stincer, 482 US 730, 740-741 [1993]; People v. Morales, 80 NY2d 450, 457 [1992]; see also, People v. Frost, 100 NY2d 129, 135 [2003]).

Footnote 3:Family Court Act §343.1 (2) provides that "[a] respondent may not be found to be
delinquent solely upon the unsworn evidence given pursuant to subdivision two" and an identical
rule is applicable to criminal actions (Criminal Procedure Law §60.20 [3]; see, People v. Groff, 71 NY2d 101, 108-109 [1987]; People v. Tomczak, 189 AD2d 926, 927 [1993]; People v. Maldonado, 199 AD2d 563 [1993]; People v. Petrie, 3 AD3d 665, 667 [2004]).

Footnote 4:The presumptive age of competency was recently lowered from 12 to 9 years by the Legislature (McKinney's 2000 Session Laws ch 1 [amending Criminal Procedure Law §60.20];
McKinney's 2003 Session Laws ch 264, §61 [amending Fam. Ct. Act §343.1]).