OPINION OF THE COURT
John M. Hunt, J.
The presentment agency has moved for an order pursuant to Family Court Act § 343.1 (4) and Criminal Procedure Law § 65.20 declaring that the five-year-old victim in this juvenile delinquency proceeding, which involves allegations that respondent committed one or more sex offenses, is a “vulnerable witness.” Additionally, the presentment agency seeks an order directing that the alleged victim’s testimony at the fact-finding hearing be taken by means of live, two-way closed-circuit television.
The juvenile delinquency petition alleges that the respondent, Noel O., has committed acts which, were he an adult, would constitute the crimes of sexual abuse in the first, second and third degrees and endangering the welfare of a child. After a preliminary hearing conducted pursuant to Family Court Act § 343.1 (see CPL 60.20 [2]; People v Byrnes, 33 NY2d 343 [1974]),[1] the court determined that the alleged victim, Jessi M. (born 2002) was competent to be sworn as a witness in the pro *420 spective fact-finding hearing (Matter of Noel O., 15 Misc 3d 1146[A], 2007 NY Slip Op 51155[U] [2007]).
Thereafter, the presentment agency moved for a finding pursuant to Family Court Act § 343.1 (4) and CPL 65.20 declaring the alleged victim to be a “vulnerable witness” and for an order directing that the alleged victim’s testimony at the fact-finding hearing be taken by means of live, two-way closed-circuit television. The statutes applicable to the presentment agency’s application were amended during the pendency of this proceeding (L 2007, ch 548 [eff Aug. 15, 2007]), and the court applied the provisions of the amendment since the statutes are procedural in nature and the court did not consider and decide the issue of the child’s vulnerability until after the effective date of the amendment (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; Bolarinwa v Albany Med. Ctr. Hosp., 261 AD2d 21, 22 [2000], Iv dismissed 95 NY2d 825 [2000]; People v Oliver, 1 NY2d 152, 157 [1956]; People v Behlog, 74 NY2d 237, 240 [1989]).
The relevant portions of the Family Court Act and the CPL allow a child witness who has been declared to be “vulnerable” to give testimony by way of live, two-way closed-circuit television at a trial or a fact-finding hearing (Family Ct Act § 343.1 [4] [a child witness may give testimony in accordance with the provisions of article 65 of the CPL]).[2]
CPL 65.10 (1), as amended effective August 15, 2007, provides that
“[a] child witness shall be declared vulnerable when the court, in accordance with the provisions of section 65.20, determines by clear and convincing evidence that it is likely that such child witness will suffer serious mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television.”
The procedures applicable to an application seeking a declaration that a child witness is “vulnerable” are set forth in CPL 65.20. The 2007 amendment added a new subdivision (2) to CPL 65.20 and the subdivision reads as follows:
“2. A child witness should be declared vulnerable when the court, in accordance with the provisions of *421 this section, determines by clear and convincing evidence that the child witness would suffer serious mental or emotional harm that would substantially impair the child witness’ ability to communicate with the finder of fact without the use of live, two-way closed-circuit television.”
In determining whether there is clear and convincing evidence that a child will suffer serious mental or emotional harm if required to testify at trial without the use of closed-circuit television, CPL 65.20 (10) sets forth a nonexhaustive list of factors which the court should consider. Those factors are as follows:
“(a) The manner of the commission of the offense of which the defendant is accused was particularly heinous or was characterized by aggravating circumstances.
“(b) The child witness is particularly young or otherwise particularly subject to psychological harm on account of a physical or mental condition which existed before the alleged commission of the offense.
“(c) At the time of the alleged offense, the defendant occupied a position of authority with respect to the child witness.
“(d) The offense or offenses charged were part of an ongoing course of conduct committed by the defendant against the child witness over an extended period of time.
“(e) A deadly weapon or dangerous instrument was allegedly used during the commission of the crime.
“(f) The defendant has inflicted serious physical injury upon the child witness.
“(g) A threat, express or implied, of physical violence to the child witness or a third person if the child witness were to report the incident to any person or communicate information to or cooperate with a court, grand jury, prosecutor, police officer or peace officer concerning the incident has been made by or on behalf of the defendant.
“(h) A threat, express or implied, of the incarceration of a parent or guardian of the child witness, the removal of the child witness from the family or the dissolution of the family of the child witness if the child witness were to report the incident to any person or communicate information to or cooperate *422 with a court, grand jury, prosecutor, police officer or peace officer concerning the incident has been made by or on behalf of the defendant.
“(i) A witness other than the child witness has received a threat of physical violence directed at such witness or to a third person by or on behalf of the defendant.
“(j) The defendant, at the time of the inquiry, (i) is living in the same household with the child witness,
(ii) has ready access to the child witness or (iii) is providing substantial financial support for the child witness.
“(k) The child witness has previously been the victim of an offense defined in article one hundred thirty of the penal law or incest as defined in section. 255.25, 255.26 or 255.27 of such law.
“(Z) According to expert testimony, the child witness would be particularly su[s]ceptible to psychological harm if required to testify in open court or in the physical presence of the defendant.”
Should the court declare that the child is “vulnerable” within the meaning of CPL 65.00 (2) in accordance with CPL 65.10 (1), which was also amended in 2007, and CPL 65.20 (2), then the statute directs that
“the testimony of the vulnerable child witness shall be taken in the testimonial room and the image and voice of the vulnerable child witness, as well as the image of all other persons other than the operator present in the testimonial room, shall be transmitted live by means of closed-circuit television to the courtroom. The courtroom shall be equipped with monitors sufficient to permit the judge, jury, defendant and attorneys to observe the demeanor of the vulnerable child witness during his or her testimony” (CPL 65.30 [1]).
“In all instances, the image of the jury shall be simultaneously transmitted to the vulnerable child witness in the testimonial room. If the court order issued pursuant to section 65.20 specifies that the vulnerable child witness shall testify outside the physical presence of the defendant, the image of the defendant and the image and voice of the person examining the vulnerable child witness shall also be simultaneously transmitted to the vulnerable child *423 witness in the testimonial room” (CPL 65.30 [2]).
A
The Confrontation Clause of the Sixth Amendment provides that, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” The Confrontation Clause, which is applicable to the states (Pointer v Texas, 380 US 400, 403 [1965]; Lee v Illinois, 476 US 530, 539 [1986]; e.g. People v Stechly, 225 Ill 2d 246, 264, 870 NE2d 333, 346 [Sup Ct 2007]), “provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination” (Pennsylvania v Ritchie, 480 US 39, 51 [1987]). “Article I, section 6 of the New York Constitution also gives a right of confrontation, in virtually identical language” (People v Bradley, 8 NY3d 124, 126 [2006]).[3]
Notwithstanding the constitutional guarantee of the right of confrontation, which literally commands that adverse witnesses testify in the presence of the accused (California v Green, 399 US 149, 157-158 [1970]; Pennsylvania v Ritchie at 51; Coy v Iowa, 487 US 1012, 1016 [1988]; People v Arroyo, 54 NY2d 567, 570 [1982], cert denied 456 US 979 [1982]), most of the states, including New York, have enacted statutes which allow a child to testify outside of the presence of the accused under certain circumstances (see Maryland v Craig, 497 US 836, 853-854 [1990] [setting forth state statutes]). These statutes were enacted for two reasons. First, it was recognized that “[c]hild abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim” (Pennsylvania v Ritchie at 60; see Matter of Nicole V., 71 NY2d 112, 117 [1987]; Matter of Philip M., 82 NY2d 238, 243 [1993]), and because even where evidence of child abuse is discovered by law enforcement and judicial proceedings are commenced, “the child may be reluctant or unable to testify” (Mat *424 ter of Christina F., 74 NY2d 532, 535 [1989]). Secondly, these statutes effectuate the states’ legitimate interest in protecting young victims of sexual abuse (see Coy v Iowa at 1020; Maryland v Craig at 852-853; People v Cintron, 75 NY2d 249, 259 [1990]; State v Crandall, 120 NJ 649, 654-655, 577 A2d 483, 485 [Sup Ct 1990]; State v Jarzbek, 204 Conn 683, 702-703, 529 A2d 1245, 1254 [Sup Ct 1987], cert denied 484 US 1061 [1988]; People v Weninger, 243 I;; App 3d 719, 727, 611 NE2d 77, 84 [3d Dist 1993]).
Thus, in 1985, the Legislature enacted article 65 of the Criminal Procedure Law (L 1985, ch 505) which “authorizes, in limited circumstances, the use of live two-way closed-circuit television as a method of permitting certain child witnesses to give testimony in sex crime cases from a testimonial room — a room which is separate and apart from the courtroom” (People v Cintron at 253-254). As interpreted by the Court of Appeals, the primary purpose of the statute
“is the avoidance of the severe mental or emotional harm that may result from requiring a child witness to testify in the public atmosphere of the courtroom concerning the intimate sexual details of the crime. Article 65 is designed to further the aim of insulating child witnesses from the trauma of testifying in open court and also, under certain conditions, from having to testify in the presence of the defendant while, at the same time, fully preserving the defendant’s constitutional rights” (id. at 254).
Before permitting a child witness to give testimony by live, two-way closed-circuit television, the trial court is required to declare the child witness, by definition a person less than 14 years old who will testify in a criminal proceeding involving a sex offense or incest, to be a vulnerable child witness. Prior to the 2007 amendment, a child witness could be declared vulnerable only
“when the court, in accordance with the provisions of section 65.20, determine[d] by clear and convincing evidence that it is likely, as a result of extraordinary circumstances, that such child witness will suffer severe mental or emotional harm if required to testify at a criminal proceeding without the use of live, two-way closed-circuit television and that the use of such live, two-way closed-circuit television will help prevent, or diminish the likelihood or *425 extent of, such harm.” (CPL 65.10 [former (1)] [emphasis added]).
Moreover, under the previous version of the statute, “[t]he required showing of likelihood of severe mental or emotional harm . . . must be the ‘result of extraordinary circumstances’ [and] CPL 65.20 contains a list of 12 factors, which, if established by clear and convincing evidence, the court ‘may consider, in determining whether there are such extraordinary circumstances’ ” (People v Cintron at 254-255). In addition to the finding of vulnerability, the trial court is required to make a specific finding in each case “whether placing the defendant and the child witness in the same room during the testimony of the child witness will contribute to the likelihood that the child witness will suffer severe mental or emotional harm” (CPL 65.20 [13]). Where such a finding is made, the court is required to direct that the defendant remain in the courtroom during the testimony of the vulnerable child witness (id.).
In Coy v Iowa, a sex abuse prosecution, the Supreme Court found the state statute allowing for the placement of a screen between the child witnesses and the defendant to be unconstitutional. The Court found that the procedure impermissibly infringed upon defendant’s confrontation rights because it was based upon a statutory presumption that the child witnesses would suffer trauma were they required to testify in defendant’s presence (487 US at 1021). In People v Cintron (75 NY2d 249 [1990]), the Court rejected a constitutional challenge to the validity of Criminal Procedure Law article 65. The Court found that since the New York statutory scheme, unlike that at issue in Coy, requires an individualized finding that a child witness is vulnerable based upon specific statutory factors, as well as an additional case-specific finding that requiring the child witness to testify in the presence of the defendant will contribute to the likelihood that the child witness will suffer severe mental or emotional harm, there was no impermissible violation of the defendant’s confrontation rights (People v Cintron at 258). Similarly, in Maryland v Craig (497 US 836 [1990]), the Court found that Maryland’s statute providing for one-way closed-circuit television for child witnesses in cases charging the defendant with child abuse to be constitutional because the procedure could not be invoked unless the trial court first determines that requiring the child to testify in the courtroom will result in serious emotional distress such that the child cannot reasonably communicate (497 US at 855-857). Notably, while the Maryland statute authorizes the use of one-way closed-circuit television, the Court found that the statutory
*426 “procedure preserves all of the other elements of the confrontation right: [t]he child must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies” (id. at 851).[4]
Prior to the 2007 amendment to CPL article 65, courts required that a declaration of vulnerability be based upon a showing that as the result of extraordinary circumstances the child witness would suffer severe mental or emotional harm were the child not permitted to testify by live, two-way closed-circuit television, a “high threshold requirement . . . necessary to protect against the infringement of the defendant’s confrontation rights” (People v Costa, 160 AD2d 889, 890 [1990], Iv denied 76 NY2d 786 [1990]; see People v Henderson, 156 AD2d 92, 99-100 [1990], Iv denied 76 NY2d 736 [1990]; People v Lindstadt, 174 AD2d 696, 697 [1991], rearg denied 208 AD2d 865 [1994], Iv dismissed 84 NY2d 1012 [1994]). The 2007 amendment to CPL article 65 (L 2007, ch 548) eliminated the necessity of establishing extraordinary circumstances and the required showing of harm to the child witness was modified from “severe” to “serious” mental or emotional harm which would impair the child’s ability to communicate with the finder of fact.
According to the sponsor of the legislation, the intent of the amendment was to, “within a constitutional framework, liberalize the ability of a judge to determine that a child is a vulnerable witness and allow the child to testify by two-way closed-circuit television” (Senate Introducer’s Mem in Support, Bill Jacket, L 2007, ch 548). A leading commentator has observed that the 2007 legislation
“liberalized the criteria for declaring a child witness vulnerable by eliminating the requirement of showing ‘extraordinary circumstances’ for a likelihood that courtroom testimony will cause ‘severe’ mental or emotional harm and substituting a finding that *427 the use of two-way closed-circuit television will diminish the likelihood of ‘serious’ mental' or emotional harm to the child that would otherwise ensue” (Preiser, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 65.10, 2008 Pocket Part, at 47).
Professor Preiser also notes that the new subdivision (2) which was added to CPL 65.20 “adds an additional requirement for the finding; to wit, a showing that courtroom testimony would substantially impair the child’s ability to communicate with the finder of the fact” (id.).
While eliminating the need that the moving party establish that the child witness would suffer severe mental or emotional harm as the result of extraordinary circumstances and substituting a requirement that there only need be a showing that the child witness would suffer serious mental or emotional harm that would substantially impair the child’s ability to communicate with the court or jury without the use of closed-circuit television, the amendment did not affect any substantial change in the procedures applicable to a determination of vulnerability.
Accordingly, the statute provides that the child witness need not testify at the hearing upon the motion and the failure of the child to testify is not grounds for denying the motion. Additionally, while the child may not be compelled to submit to a psychological or psychiatric examination for purposes of a hearing held under CPL 60.20 (CPL 65.20 [7]; see People v Biavaschi, 265 AD2d 268, 269 [1999], Iv denied 94 NY2d 916 [2000]), expert testimony is admissible at the hearing (CPL 65.20 [8] [a]; People v Watt, 84 NY2d 948, 951-952 [1994]; People v Ramos, 203 AD2d 599 [1994]) although expert testimony is not a prerequisite to a finding of vulnerability (People v Paramare, 288 AD2d 53, 54 [2001], Iv denied 97 NY2d 759 [2002]).
B
Appended to the motion papers submitted by the presentment agency was a written statement in the form of a letter from Elizabeth Osborn, Ph.D., a psychologist who is apparently employed by the Jewish Board of Family and Children’s Services. Dr. Osborn’s written letter states that:
“she has consulted with the family of the victim following a traumatic incident that occurred on 5/28/ 07. Jessi was sexually molested by her 14-year-old god brother, Noel O., who she has trusted and *428 known since birth. She reported that he kissed her and forced his tongue in her mouth, touched her vagina, and forced her to touch his penis. Despite initially presenting as calm following the incident, Jessi developed symptoms during the past four days that are consistent with an acute traumatic reaction. She is having difficulty sleeping, frequently waking up during the night screaming and running into her parents’ bedroom . . . [w]hen undressing for bathing or to change into clothing for sleep, her mother reports that she now covers her body and screams that Noel is in the house. . . . Jessi has additional preoccupations that she is ‘bad’ and that ‘the police will take her to jail’. These feelings of guilt and self-blame are likely associated with statements Noel reportedly made to her regarding what would occur if she told her parents what he had done to her.
“To this end, I believe that requiring Jessi to testify in court in the presence of Noel would unnecessarily inflict further psychological trauma . . . .”
While the court found that Dr. Osborn’s statement was relevant to an inquiry conducted under article 65 of the CPL, absent a concession by the respondent (CPL 65.20 [5]), it was not conclusive and the court set the motion down for a hearing in accordance with CPL 65.20 (6). The hearing upon the motion was conducted on October 31, 2007. The sole witness at the hearing was Dr. Mitchell Frank, a psychologist who is the associate director of the Family Court Mental Health Services Clinic. Upon stipulation of the parties, the written report by Dr. Frank was admitted into evidence with the same force as actual testimony, with the Law Guardian being permitted to reserve her right to call Dr. Frank as a witness at any fact-finding hearing with respect to issues relating to the victim’s credibility.
According to Dr. Frank, he interviewed Jessi M. at the Family Court Mental Health Services Clinic for 45 minutes on October 23, 2007. Dr. Frank also conducted collateral interviews with Jessi’s mother, Michelle W, Ph.D., who herself is a psychologist, and Ines Wessman, Ph.D., a psychologist who is providing psychotherapy for the child. In addition, Dr. Frank considered the written statement of Dr. Elizabeth Osborn which had been submitted with the motion papers.
Dr. W. informed Dr. Frank that Jessi is the only child born of her existing marriage. Dr. W is a psychologist and Jessi’s father *429 is a special education teacher. Dr. W related that Jessi enjoyed an uneventful childhood and that Jessi met all developmental milestones prior to May of 2007 when the incident alleged in the juvenile delinquency petition occurred. According to Dr. W, she had developed a personal relationship with the mother of the respondent when the mother was 15 years old. Dr. W. indicated that she had met respondent’s mother when she was working as a social worker in a position she previously held. Dr. W. befriended respondent’s mother when the mother became pregnant with the respondent and the relationship continued when respondent’s sister was born a year later. Dr. W. was designated as the godmother of both the respondent and his younger sister. At some point, both respondent and his sister were removed from their mother’s custody by the New York City Administration for Children’s Services and they were placed in the home of the father of respondent’s sister. Respondent’s mother “reached out” to Dr. W. who opened her home so that the mother could have weekend visitation with her children there. This arrangement continued for some time and respondent and his younger sister “became virtual siblings” to Jessi, an only child.
According to Dr. Frank, the child’s mother reported that after respondent allegedly molested Jessi, the child “started bed wetting and was sleeping so lightly and being jarred awake so easily, that a parent had to sit in her room for hours, as she would scream if she awoke and they were not there.” Dr. W further informed Dr. Frank that Jessi still suffered from occasional “recurring nightmares” and she related that Jessi suffered from other symptoms of posttraumatic stress such as wanting
“to burn and rip a picture of the respondent... an incident at day camp during the summer in which Jessi became frightened that a counselor would molest her, later saying that he reminded her of the respondent. She also became very agitated one day in court when she saw someone who reminded her of the respondent . . . she knocked a peer down when the peer was trying to get into a bathroom stall she was in.”
Dr. Frank also interviewed the alleged victim, Jessi M. He found the child to be “a somewhat overweight, and obviously well-spoken and bright SVs year old girl.” Jessi informed Dr. Frank that Noel and his sister Josie “used to come by once in a while, but then it stopped.” Asked why Noel and Josie stopped *430 visiting her home, Jessi replied that it was because “Noel is the one who did the thing that’s wrong, that’s why I’m here.” According to Dr. Frank, Jessi told him that “she was afraid that Noel would hurt her in the future if she saw him and she was quite emphatic that she did not want to have him at her house again or even to see him at all.” When Dr. Frank asked Jessi how Noel would “hurt” her again, she stated that “[s]he did not believe that Noel would hurt her in the sense of hitting her, but that he would be ‘inappropriate’, which she understood to mean, ‘you tell your friends that something is private’.” Jessi told Dr. Frank that “she does not miss Noel . . . [s]he did not think he was necessarily a mean person, but she was afraid of him.” Jessi also told Dr. Frank that she sometimes has “bad dreams of ‘Noel over and over and over and over again’.” According to Dr. Frank, Jessi “noted with obvious relief that her family will soon be moving and that Noel would not know where they live anymore.” Jessi related her concern that if she saw Noel in the future “he would do it again” and that she would be scared if she had to tell her story in court in Noel’s presence. She stated that “if she saw him in court he would ‘do it again, at my house’.”
In Dr. Frank’s opinion, and without regard for whether the allegations in the petition are true or not, he found that “Jessi’s experience of the respondent is distinctly one of fear.” Dr. Frank found that Jessi
“has subjective symptoms of trauma, specifically poor sleep and recurring nightmares featuring the respondent. Additionally, her fear that the respondent ‘would do it again’, as she put it, even if she meets him in the protected environment of the courtroom, or any other setting where there are adults around, is the sort of irrational idea, surrounded by otherwise rational thinking processes relative to her age, that could be consistent with trauma.”
Dr. Frank noted that the child’s “affect becomes constricted and anxious when she discusses the respondent” and that “[s]he is distinctly afraid of seeing him in the courtroom.” Dr. Frank further observed that because the child’s overall attitude towards respondent was “not negative” and “she did not seem to be making a case against him in general or trying to strike back at him, only increased the sense that her expressions of fear are genuine.”
Therefore, based upon the information obtained during the evaluative process, Dr. Frank concluded that
*431 “it is believed that having to testify in the courtroom in the physical presence of the respondent would greatly increase the risk that Jessi would become highly anxious and agitated. In that event she could easily shut down emotionally and cognitively, and her ability to communicate with the fact-finder would be impaired.”
Dr. Frank further found that
“[t]hese two factors — the experience itself of testifying in the presence of the respondent, whom she has not seen in several months, but has repeated nightmares about, and the potential outcome of shutting down communicatively in the process and coming away, potentially, that she has failed in her task, would greatly increase the likelihood that her persistent anxieties would be reinforced, and that serious psychological harm would ensue. In light of this . . . Jessi should be considered a vulnerable witness in accord with § 343.1 of the Family Court Act.”
The factors set forth in CPL 65.20 (former [9]) have been moved to present subdivision (10) in unchanged form and those factors are now to be utilized in determining whether there is clear and convincing evidence that the child would suffer serious emotional or mental harm that would substantially impair the child’s ability to communicate with the finder of fact. There continues to be no requirement that the court make findings as to any particular number of the factors listed in the statute in order to declare a child witness to be vulnerable. Rather, the statute states that
“[i]n deciding whether a child witness is vulnerable, the court shall make findings of fact which reflect the causal relationship between the existence of any one or more of the factors set forth in subdivision nine [now subd. (10)] of this section or other relevant factors which the court finds are established and the determination that the child witness is vulnerable” (CPL 65.20 [12] [emphasis added]; see People v Guce, 164 AD2d 946, 948 [1990], Iv denied 76 NY2d 986 [1990] [court based finding on five of the enumerated factors]; People v Pierce, 266 AD2d 721 [1999], Iv denied 94 NY2d 951 [2000] [court based finding on three factors]; People v Paramore at 54 [court based finding on determination that child would suffer severe mental or emotional *432 trauma if required to testify in defendant’s presence]; People v Lindstadt at 697 [finding based upon five factors]; People v Ramos at 599 [finding based upon 4 of the 12 factors]; People v Martin, 294 AD2d 850 [2002], Iv denied 98 NY2d 711 [2002] [court based finding upon two of the enumerated factors]).
Based upon the record, this court finds that there is clear and convincing evidence that the alleged victim, Jessi M., is a vulnerable child witness. The court finds that it is likely that Jessi will suffer serious mental or emotional harm that would impair her ability to give testimony before the court if required to testify at trial in respondent’s presence and that the use of live, two-way closed-circuit television will diminish the likelihood or extent of such harm (CPL 65.10 [1]; 65.20 [2]). In reaching its determination, the court has found that several of the factors which would cause the child to suffer serious mental or emotional harm as set forth in CPL 65.20 (10) are established by clear and convincing evidence. Specifically, the court finds that the charges set forth in the petition “particularly heinous” in that it is alleged that the MVa-year-old respondent inserted his tongue into the mouth of the five-year-old victim, placed his fingers on the victim’s vagina and forced the victim to touch his penis; the child witness is particularly young; at the time of the charged crimes the respondent occupied a family-like relationship with the victim and her family in that the victim’s mother is his godmother and he had regular contact with the victim whom he has known for her entire life; and, according to expert testimony, the child witness would be particularly susceptible to psychological harm if she were to be required to testify in respondent’s presence in the courtroom (e.g. People v Guce at 948; People v Lindstadt at 697; People v Pierce at 721; People v Martin at 850; People v Doherty, 305 AD2d 867, 868 [2003], Iv denied 100 NY2d 580 [2003]; People v Dalton, 47 AD3d 1010 [3d Dept 2008]).
Accordingly, it is hereby ordered that the motion of the presentment agency for a declaration that the alleged victim, Jessi M., is a vulnerable witness is granted; and the testimony of the vulnerable child witness shall be taken by means of live, two-way closed-circuit television pursuant to CPL 65.30.[5]

. Family Court Act § 343.1 (2) and CPL 60.20 (2) provide that: “[e]very witness more than nine years old may testify only under oath unless the court is satisfied that such witness cannot, as a result of mental disease or defect, understand the nature of an oath. A witness less than nine years old may not testify under oath unless the court is satisfied that he or she understands the nature of an oath.”
In addition, CPL 60.20 (2) provides that “[a] witness understands the nature of an oath if he or she appreciates the difference between truth and falsehood, the necessity for telling the truth, and the fact that a witness who testifies falsely may be punished.” While the Family Court Act version of the child competency statute does not contain the language defining when a witness less than nine years old understands the nature of an oath, “there is little doubt that the CPL criteria . . . apply to delinquency proceedings, and should form the basis of a voir dire to determine testimonial capacity” (Sobie, 2004 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 343.1, 2007 Pocket Part, at 102).

. Family Court Act § 343.1 (4) and Criminal Procedure Law § 65.00 (1) contain identical definitions of the term “child witness.” Additionally, Family Court Act § 343.1 (4) provides that amendments to Criminal Procedure Law article 65 shall apply in juvenile delinquency proceedings.

. It has been observed that the Confrontation Clause does not merely codify the common-law rules of evidence relating to hearsay and hearsay exceptions (California v Green, 399 US 149, 155-156 [1970]; Crawford v Washington, 541 US 36, 61 [2004]). While the Confrontation Clause and the rules of evidence governing the admissibility of hearsay "protect similar values” (Green at 155; Bourjaily v United States, 483 US 171, 182-183 [1987]), the Supreme Court has clearly stated that the Confrontation Clause created a rule of trial procedure rather than a rule of evidence (Crawford at 61; see Maryland v Craig, 497 US 836, 862 [1990, Scalia, J., dissenting]; State v Mechling, 219 W Va 366, 372, 633 SE2d 311, 317 [Sup Ct App 2006]).

. Because the child’s testimony is given in court under article 65 (see Maryland v Craig at 851 [court rejects notion that child witness’ testimony constitutes out-of-court testimony]; State v Jarzbek, 204 Conn at 697, 529 A2d at 1252 [same]), the statute does not violate Crawford v Washington which clearly prohibits the introduction of testimonial statements by a witness who does not appear at trial (541 US at 53-54; see People v Nieves-Andino, 9 NY3d 12, 14-15 [2007]).

. This written decision supplements the court’s decision from the bench on October 31, 2007.